ELDER, DEMPSTER & COMPANY v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY.

No. 2282.    Decided March 19, 1913.

**1.—Limitation—Action for Debt.**

Actions for debt, within the meaning of the Statute of Limitation (Rev. Stats., 1895, art. 3354, paragraph 4, art. 3356) include suits brought to recover money for the breach of a contract, without regard to the technical distinction between debt and damages. (Pp. 632-635.)

**2.—Same—Suit on Written Contract—Carrier—Bill of Lading.**

A bill of lading signed by a carrier for through transportation over its own and connecting lines of railway and showing the terms and conditions of the

carriers undertaking, is a written contract with the shipper, both by the carrier executing it and by the connecting one receiving and transporting it under such agreement, by virtue of articles 331a, 331b, Revised Statutes, 1895 (Rev. Stats., 1911, arts. 731, 732). A suit against either or both for loss of the property so transported, if based on such bill of lading, is an action for debt evidenced by and founded upon a contract in writing, and is governed by the Statute of Limitation of four years (Rev. Stats., 1895, art. 3356). It is not governed by article 3354, par. 4, Revised Statutes of 1895, nor barred thereby in two years. (Pp. 635-640.)

### 3.—Cases Distinguished.

Galveston, H. & S. A. Ry. Co. v. Clemons, 19 Texas Civ. App., 452, 47 S. W., 731, distinguished from Davies v. Texas Cent. R. Co., 133 S. W., 295. Ft. Worth & D. C. Ry. Co. v. McAnulty, 7 Texas Civ. App., 321, 26 S. W., 414; Galveston, H. & S. A. Ry. Co. v. Roemer, 1 Texas Civ. App., 191, 20 S. W., 843; Kansas City S. Ry. Co. v. Grain Co., 114 S. W., 441; Gulf C. & S. F. Ry. Co. v. Dwyer, 75 Texas, 571; Gulf, C. & S. F. Ry. Co. v. Baird, 75 Texas, 256; distinguished from present case. (Pp. 640-646.)

### 4.—Pleading.

See pleading in action against connecting railways alleging a through shipment at agreed rates on written bill of lading acquiesced in and acted on by both carriers, held sufficient to show an action upon a written contract made by both, and not subject to the bar of the statute of limitation of two years, asserted by demurrer. (Pp. 646-651.)

### 5.—Jurisdiction of Supreme Court—Certified Question.

The action of the Court of Civil Appeals in certifying a question as one of general interest deemed important, will support the jurisdiction of the Supreme Court to determine the question, though it holds certain cases, on account of supposed conflict in which it was also certified, to be not irreconcilable. (Pp. 642, 643.)

Question certified from the Court of Civil Appeals for the First District, in an appeal from Galveston County.

*Edward F. Harris* and *Harris & Harris,* for appellant.—The petition sets out such an action for debt, where the indebtedness is evidenced by or founded upon any contract in writing, as is within the specific provisions of article 3356, Rev. Stats. The two years statute of limitation, Art. 3354, R. S., is not applicable to the petition of the plaintiff. Rev. Stats., arts. 331a, 331b, 3354, 3356, 3358; Robinson v. Varnell, 16 Texas, 388; Thomas v. Greer, 6 Texas, 371; Schurenberg v. Wilhelm, 23 S. W., 817; Trube v. Montgomery, 7 Texas Civ. App., 557, 27 S. W., 19; Gordon v. Rhodes, 102 Texas, 300, 116 S. W., 40; Ry. Co. v. Johnson, 74 Texas, 256; Stiff v. Fisher, 2 Texas Civ. App., 346, 21 S. W., 291; Meade v. Warring, 35 S. W., 308; Wooldridge v. Rawlings, 14 S. W., 667; Sanborn v. Plowman, 20 Texas Civ. App., 484, 49 S. W., 639; Howard v. Moore, 1 W. & W., sec. 225; Millington v. Railway Co., 2 W. & W., sec. 171; Railway Co. v. Wheat, 2 W. & W., sec. 165; Light Co. v. Electric Co., 26 S. W., 310; Ryan v. Railway Co., 56 Texas, 1; Dwyer v. Railway Co., 69 Texas, 710, 75 Texas, 572; Wilkinson v. Johnson, 83 Texas, 392; Schloss v. Railway Co., 85 Texas, 601; Eccles v. Daniels, 16 Texas, 137; Express Co. v. Fuller, 4 Texas Civ. App., 213, 23 S. W., 412; Railway Co. v. Silegman, 23 S. W., 298; Railway Co. v. Bryan, 28 S. W., 98; Williams v. Gutt-

man, 43 S. W., 901; Railway Co. v. Pickens, 58 S. W., 156; Voelcker
v. McKay, 61 S. W., 424; Railway Co. v. Darby, 28 Texas Civ. App.,
229, 67 S. W., 129; Bessling v. Railway Co., 35 Texas Civ. App., 470,
80 S. W., 639; Railway Co. v. Dolan, 85 S. W., 302; Railway Co. v.
Oil Co., 86 S. W., 1042; Cohen v. Railway Co., 44 Texas Civ. App.,
381, 98 S. W., 437; Railway Co. v. Watkins, 45 Texas Civ. App., 321,
100 S. W., 162; Railway Co. v. Groves, 48 Texas Civ. App., 45, 106
S. W., 416; Railway Co. v. Grain Co., 114 S. W., 436; Railway Co. v.
Vaughan, 16 S. W., 775; Navigation Co. v. Davidson, 32 Texas Civ.
App., 492, 74 S. W., 790; Railway Co. v. Sweet, 40 S. W., 463; Manu-
facturing Co. v Railway Co., 74 S. W., 492; Hutchinson on Carriers
(2d ed.), sec. 737 et seq.; 3 Enc. Pl. & Pr., 819 et seq.; Hillman v.
Gallagher, 128 S. W., 899.

*E. B. Perkins, John M. King,* and *Wilson, Dabney & Meachum,* for
appellees.—The petition does not set out an action for debt when
construed under recognized canons of construction, which established
that an action against a carrier will be construed to be an action for
a tort, or, in common-law parlance, an action on the case rather than
on covenant, or *in assumpsit,* when there is the slightest room for
construction; nor is this an action for debt in any of its aspects; but
if an action for debt, then an action on a contract not in writing, or
if in writing, then not wholly in writing; and a fictional contract,
created by law; and, under any of these circumstances, it is barred
by the statute of two years limitation. Rev. Stats., art. 3354, sections
1, 2, 3 and 4; G. H. & S. A. R'y Co. v. Clemons, 19 Texas Civ. App.,
452, 47 S. W., 731; Kansas City So. R'y v. Rosebrook-Josep Grain
Co., 114 S. W., 441-2; H. & T. C. R'y Co. v. Adams, 49 Texas, 748;
F. W. & D. C. R'y v. McAnulty, 7 Texas Civ. App., 321, 26 S. W.,
414; R'y Co. v. Roemer, 1 Texas Civ. App., 195, 20 S. W., 843; Bishop
on Contracts, secs. 182, 190, 199, 205; 25 Cyc., pp. 1038, 1042; 4
Elliott on Railroads (2d ed.), sec. 1694; Pac. R. Co. v. Chicago, etc.,
Ry. Co., 144 Ill., 197; Heim v. McGaughan, 32 Miss., 17; Aiken v.
Railway Co., 118 Ga., 118; Central R'y v. Chicago Portrait Co., 122
Ga., 11, 49 S. E., 727, 106 Am. St. Rep., 88; New Orleans R'y v.
Hurst, 36 Miss., 660, 74 Am. Dec., 788.

When the law compels a duty or a performance or when in pursu-
ance of law a duty or performance is undertaken, such duty or per-
formance, although it be classified as a contract, is not a contract in
writing with reference to limitation, and the fact that the law also
requires a written memorandum thereof to be taken and signed, does
not constitute a contract in writing with reference to the statute of
limitations. While it is not necessary, for the purposes of this case,
to determine whether or not the transaction involved was contractual,
yet, it is not contractual in the true sense, but a duty imposed by law
of which the law compels a memorandum to be kept in writing.

MR. JUSTICE HAWKINS delivered the opinion of the court.

The Court of Civil Appeals for the First Supreme Judicial District
has certified for our decision a question which, with its statement of
the case, is as follows:

"This is a suit in the County Court of Galveston County by Elder, Dempster & Co. against the St. Louis, Southwestern Railway Company of Texas and the International & Great Northern Railway Company to recover $550.00, the alleged value of eight bales of cotton.

"For a full understanding of the question presented it is necessary to set out a large portion of plaintiff's petition as follows:

. " 'That on, to-wit, the 20th day of November, 1906, there were delivered to defendant St. Louis, Southwestern Railway Company of Texas, at Gatesville, Texas, by Gussoni & Co., fifty bales of cotton marked X O I E, which were received by said defendant to be delivered to the said shippers' order at Galveston, Texas, notify J. H. W. Steele, Galveston, Texas, for which cotton the said defendant executed and delivered a through bill of lading, No. 256, from Gatesville, Texas, to Galveston, Texas; that thereafter the said Gussoni & Co. assigned and delivered said bill of lading and all rights thereunder to the plaintiffs, and such assignment was and is evidenced by the indorsement on the back of said bill of lading, and the plaintiffs herein are the lawful owners and holders of said bill of lading and all rights accruing thereunder.

" 'That said shipment was made at agreed and through rates for the whole route, and said bill of lading was recognized, acquiesced in and acted upon by both of said defendant railroads; and forty-two bales of said cotton, and no more, were by the defendants delivered to these plaintiffs in Galveston, Texas, on various dates between December 21, 1906, and April 18, 1907, and in due course of business the remaining undelivered quantity of eight bales of cotton should also have been delivered on or about the 18th day of April, 1907; said date being a reasonable time under the conditions then existing for the delivery of said cotton at Galveston, Texas, but both of the defendants utterly failed to deliver the said eight bales of cotton as they were bound to do, and never have delivered the said eight bales of cotton, or any part thereof, whereby the said cotton was wholly lost to the plaintiff, to the damage of plaintiff in the sum of $550.00.

" 'That at the request of the defendants the said bill of lading was by the plaintiff deposited with the defendant International & Great Northern Railroad Company, and both of the defendants are hereby notified to produce the same at the trial of this cause.

" 'That a true and correct copy of said bill of lading cannot be attached hereto, because the plaintiffs have no such copy in their possession, and the original bill of lading is not in their possession, but in the possession of the defendants, as above stated.

" 'That the plaintiffs allege that the damage hereinbefore set forth was caused them by the breach of the contract of carriage entered into in writing between the plaintiffs and the defendants under said bill of lading; and that said bill of lading in writing bound and obligated the defendants, and each of them, to safely deliver said cotton, as hereinbefore stated, at Galveston, Texas; the plaintiffs alleging, as hereinbefore set out, that said bill of lading was issued by the St. L. S. W. Ry. Co. of Texas, and recognized, acquiesced in and acted upon by both of said defendant railroads.'

"The original petition was filed February 23, 1910. To this peti-

tion the defendants interposed a special exception that it appeared
from the allegations of the petition that the plaintiffs' cause of action
was barred by the statute of limitations of two years. This exception
was sustained by the trial court and the plaintiffs declining to amend,
the cause was dismissed.

"The single question presented by the appeal is whether the cause
of action stated in the petition comes under the provisions of the two
or four years statute of limitation. This question was decided ad-
versely to appellant by the Court of Civil Appeals of the Fourth Dis-
trict, in the case of G. H. & S. A. Ry. Co. v. Clemons, 19 Texas Civ.
App., 452 (47 S. W., 731), and by the Court of Civil Appeals of the
Third District in Davies v. Texas Central Ry. Co. (133 S. W., 295),
adversely to appellees' contention in the present case. We are unable
to distinguish these two cases, or to distinguish the present case from
either of them, on this point. We approve the decision of the Davies
case in the main for the reasons stated in the opinion, but such de-
cision of the present case would necessarily conflict with the decision
in the Clemons case, as is clearly shown by the petition in that case,
a copy of which we have before us. This, in our opinion, requires
us, under Section 1, Chapter 98, of the Acts of the 26th Legislature
(Acts 1899, p. 170) (R. S., 1911, Art. 1623) to certify the question to
the Supreme Court. For this reason, and also under the provisions
of Art. 1043 (R. S. 1911, Art. 1619), inasmuch as the question pre-
sented is of general importance, upon which the Courts of Civil Ap-
peals are evidently not agreed, and the decision of this court in the
present case is final, we deem it advisable to submit to your Honorable
Court the following question:

"Question. Did the District Court err in sustaining the special
exception to the petition?"

Inasmuch as it appears from the brief for appellants and even from
the first paragraph of the foregoing statement by the Court of Civil
Appeals that this cause came up from the County Court of Galveston
County, we will treat as clerical and immaterial error the reference
in the certified question to the District Court.

The contentions of the parties are, in substance, as follows:

Appellants, through their attorneys, insist that "debt," as used in
our statutes of limitation, includes damages for breach of a written
contract; that the cause of action as stated in the petition is *ex con-
tractu,* and not *ex delicto;* that under the agreement of the initial
carrier for through shipment of the cotton, from Gatesville to Galves-
ton, recognized, acquiesced in and acted upon by its connecting carrier,
damages for a breach of that agreement constitute an indebtedness
which is both evidenced by and founded upon a contract in writing,
to-wit, the bill of lading; that the petition declares upon such written
contract and seeks recovery of damages for an alleged breach thereof,
rather than for conversion of the cotton or for neglect of the carriers
to perform a statutory duty, and that, consequently, the statute of
four years limitation, Revised Statutes 1895, Art. 3356, Sub. 1, ap-
plies. It is as follows:

"There shall be commenced and prosecuted within four years after

the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

"1. Actions for debts where the indebtedness is evidenced by or founded upon any contract in writing."

Appellees, through their attorneys, insist that the cause of action is, necessarily, *ex delicto;* in tort, for conversion of the cotton, or in assumpsit, for failure in the performance of a statutory duty. They concede that "debt," as used in our limitation statutes, includes damages for breach of a written contract; but they contend that if this be an action for debt (which they deny), it is an action on a contract not in writing, or if in writing, not *wholly* in writing, that the bill of lading is, practically, nothing more than a receipt for the goods,— a mere fictional contract, a contract in name only—and that the real obligation of the carriers arises entirely out of their statutory duty to receive and transport the goods; and that, under any such circumstances, the action is barred by the statute of two years limitation. It embraces the following provisions:

"Art. 3354. There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

"4. Actions for debt where the indebtedness is not evidenced by a contract in writing." (Revised Statutes 1895.)

The issue as to which statute controls is tersely presented by the certified question.

That "actions for debt," as used in said statutes, include suits brought to recover money for the breach of a contract in writing, without regard for the technical distinction between debt and damages, is well settled.

The Congress of the Republic, in 1841, enacted a statute of limitation of four years which embraced "all actions of debt grounded upon any contract in writing." (Gam. Laws of Tex., Vol. 2, p. 627.) It remained in force until it was carried into the Revised Statutes of 1879 in amended form, embracing:

"1. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing"; and in that amended form it has remained in force to this day. Revised Statutes, 1879, art. 3205; Rev. Stats., 1895, art. 3356; Rev. Stats., 1911, art. 5688.

The original statute was construed by this court in 1856, in Robinson v. Varnell, 16 Texas, 382, the action being upon a written contract and for a sum of money for the hire of a slave and for damages for failure to redeliver him on January first, 1849. In disposing of the case this court said with reference to so much of the action as related to damages:

"It is admitted that the action is founded on a contract in writing, but it is insisted the limitation of four years does not apply, because it is not an 'action of debt.' It is true it is not an action of debt, nor an action to recover a debt, technically so called. Technically, we have no such action as an action of debt. If we were to construe the statute literally, according to the technical signification of its terms, it is plain the present case would not come within any of its provisions. It is not technically an action of debt or an action to re-

cover a debt; but it is an action to recover a sum of money, technically damages founded on the breach of a contract in writing for the delivery of specific property. * * * It must, then, receive such a reasonable and liberal interpretation as will give it effect according to the spirit and intention of the statute. To do this, we must disregard the technical distinction of forms and terms, and look to the substance and manifest object of the statute. That, obviously, was to prescribe a limitation of all actions for the recovery of money upon contracts in writing without reference to any technical distinction of terms, which have no place in our system. We cannot suppose that either the term 'action' or 'debt' was used in a strictly technical common law sense; the term *actions*, with reference to common law forms, or *debt* in reference to the strict common law meaning of that term. We cannot give that construction to the term actions, for the obvious reason that we have not the common law forms of action; and though there would not be the same difficulty in giving a technical meaning to the term *debt*, there is no more reason for supposing that such a meaning was attached to it by the Legislature. The more reasonable construction, and that which best harmonizes with the general provisions and policy of the statute, we think is, to consider the terms 'action of debt, grounded on any contract in writing,' as including all suits brought to recover money for the breach of a contract in writing without regard to the technical distinction between debt and damages. The present action was brought upon a contract in writing to pay a sum certain in money, technically a debt, and an unliquidated sum for the breach of the contract to deliver specific property, technically damages. Both demands arise upon the breach of the same written contract; and it cannot have been intended in such a case, that one period of limitation should bar one part of the cause of action, and a different period another part, arising upon the same contract, merely because, in technical legal phrase, the one is called debt and the other damages. The suit, being for the recovery of money for the breach of a written contract, comes within the reason and intention of the provision prescribing the limitation of actions for money demands arising upon written contracts; which being four years, the court did not err in holding that the right of action was not barred by the statute."

If said statute in even its original form had been carried into subsequent revisions of our laws, it would be presumed, in each instance, that the Legislature re-enacted it expecting and intending that it should be so construed thereafter.

However, not content with that, the Legislature, as we have seen, inserted in the Revised Statutes of 1879, the words "is evidenced by or," and changed the word "grounded" to "founded," making subdivision 1 read as first above quoted, and has carried the same language forward into each subsequent revision, the legislative purpose evidently being to make certain and to broaden and liberalize the legal effect of the statute, in accord with the construction which this court had so given to it in its original form.

Robinson v. Varnell, supra, was referred to and quoted from, approvingly, by this court in 1909, in Gordon v. Rhodes, 102 Texas,

300, 116 S. W., 40, wherein it was held that the word "debt," as used in Revised Statutes, art. 3354, sub. 4, supra, embraces damages for deceit in selling lands, and again in 1910, in Hillman v. Gallagher, 103 Texas, 427, 128 S. W., 899, wherein it was held that an action for damages for breaches of a liquor dealer's bond was an "action for debt" within the operation of said art. 3356, sub. 1, and that the cause of action was both evidenced by and founded upon a contract in writing, to-wit, the statutory bond.

The doctrine so announced in the above decisions has been recognized and applied by several of our Courts of Civil Appeals. Stiff v. Fisher, 2 Texas Civ. App., 346, 21 S. W., 292; Scharenberg v. Wilhelm, 23 S. W., 817; Wood Mowing etc. Co. v. Hancock, 4 Texas Civ. App., 302, 23 S. W., 384; Trube v. Montgomery, 7 Texas Civ. App., 557, 27 S. W., 19; Houston Saengerbund v. Dunn, 41 Texas Civ. App., 376, 92 S. W., 429; Davies v. Railway, 133 S. W., 295; St. L. S. F. & T. Ry. Co. v. Burge-Forbes Co., 139 S. W., 3.

The only Texas decision to the contrary which we have found was by the old Court of Appeals in Millington v. Railway, 2 W. & W., sec. 171, in which Robinson v. Varnell was apparently overlooked.

But, just here, upon the contentions of appellees, arise the following questions:

First. Is the bill of lading a "contract in writing" within the meaning of Art. 3356, *supra*? This inquiry goes to both the form and the substance of that instrument, and calls into view the statutory duties of each of the carriers with regard to the shipment.

That the bill of lading was not signed by the shipper is immaterial. Ryan v. Missouri K. & T. Ry. Co., 65 Texas, 17; Schloss v. Atchison, T. & S. F. Ry. Co., 85 Texas, 602. In Wells, Fargo & Co. Express v. Fuller, 4 Texas Civ. App., 213, 23 S. W., 412, the court said:

"The receipts given by the express company purports to state the terms upon which the shipment was made, and, though signed only by the carrier, when accepted by the shipper, he became a party to it, bound by its terms. Hutch. Carr., para. 120, 122. It contains all the necessary elements of a shipping contract, and under well-established principles it must be treated as the final agreement of the parties, into which all parol negotiations and understandings were merged, and by its terms the duties and liabilities of the parties thereto must be determined. 'Resort cannot be had to prior or contemporaneous parol negotiations or agreements to vary its terms.' And this rule applies not only to its express provisions, but to the legal import of the contract,—and further provisions which the law makes for the parties, such as the right of the carrier to route the shipment when the contract, in its express terms, is silent upon that point. Hutch. Carr., para. 126b, 127; Port., Bills Lad., para. 64, 65, and cases cited; Arnold v. Jones, 26 Texas, 335; The Delaware, 14 Wall., 579; White v. Ashton, 51 N. Y., 283; Creery v. Holly, 14 Wend., 26."

Since the decision in the Express Case was rendered the Legislature enacted a statute which contains the following provisions:

"Art. 719. Each and every bill of lading issued by the authorized agent of any carrier or receiver thereof, affected by this chapter, shall be deemed and held to be the act and deed of such carrier or receiver

thereof, and the principal shall be liable thereon in accordance with the terms thereof.'' Rev. Stats., 1911, Acts 1910, 4th S. S., p. 138, sec. 6.

The bill of lading in the case at bar, as set out in the brief for appellees, was in writing, and was duly signed on behalf of the initial carrier. It speaks the agreement between that carrier and the shipper for through carriage of the cotton from Gatesville to Galveston, consigned to ''shipper's order, notify J. H. W. Steele.'' It embodies the essential elements of an ordinary contract.

By the terms of a statute in force at the date of said shipment and bill of lading and yet in force, the initial carrier was required to execute and deliver to the shipper, upon receiving the cotton, a bill of lading, upon demand being made therefore; but it was under no common law or statutory obligation to issue a bill of lading for a through shipment extending beyond its own line. It did so, however, as we have seen.

Art. 322, Revised Statutes, 1895, is as follows: ''Common carriers are required, when they receive goods for transportation, to give to the shipper, when it is demanded, a bill of lading or memorandum in writing, stating the quantity, character, order and condition of the goods; and such goods shall be delivered, in the manner provided by common law, in like order and condition to consignee, the unavoidable wear and tear and deterioration in due course of transportation only excepted; and in case such common carrier shall fail to deliver goods as above required, they shall be liable to the party injured for his damages, as at common law; and in case of their refusal to execute and deliver a bill of lading or memorandum in writing, as above required, they shall be liable to a penalty of not less than five nor more than five hundred dollars, to be recovered as in the preceding article.'' (Rev. Stats., 1911, art. 710.)

In construing that statute this court has held that the bill of lading therein required constitutes a contract between the carrier and the shipper, binding both.

In Schloss v. Atchison, T. & S. F. Ry., 85 Texas, 601, this question was certified by a Court of Civil Appeals: ''Was the expense account furnished by the company to plaintiff after the arrival of the goods at their destination, showing the amount of the freight charges due, a part of the bill of lading within the meaning of the statute''? In answering it, and after quoting from said statute, this court said:

''This, under our statute, constitutes a bill of lading. It is a contract entered into between the parties at the time the goods are delivered, and is equally binding upon both parties. It may be true in practice, as claimed, that in fact the railroads dictate the terms, but in law this is the contract when made. The expense account is a bill of particulars of service rendered and expenses paid under the contract, made by the railroad company alone. The shipper has no part in making it, and is not bound by it.''

Arnold v. Jones, 26 Texas, 335, was an action for damages for loss of cotton on the Brazos river in transit by boat from Waco to Galveston under a written bill of lading. The boat struck a sunken rock

and was wrecked and part of the cotton was lost. The trial court excluded oral testimony to the effect that at the time of the execution of the bill of lading by the common carriers there was an express understanding between them and plaintiff, the shipper, that they were not to be answerable for any risk or loss that might unavoidably befall the boat or cotton in descending the river. This court affirmed that judgment, saying of said testimony: "It was evidently intended to contradict or vary the written contract entered into by the parties."

A bill of lading issued by a railway company for a shipment of livestock was recognized and treated by this court as a written contract in the comparatively recent case of Galveston, H. & S. A. Ry. Co. v. Jones, 104 Texas, 92, 134 S. W., 328, as will more fully appear from an excerpt set out below in our discussion of another point.

In Texas & P. Ry. Co. v. Wheat, 2 W. & W., sec. 165, which was an action for damages to cattle, plaintiff alleged, in language substantially like that in the petition in the case before us, that the shipment was made "on through bills of lading, and at agreed and through rates for the whole route, the contracts and bills of lading of each of said railroads in regard to the shipment of cattle being recognized and carried out by the others." Held, "That the petition was founded upon the special contract evidenced by the bill of lading, and was not an action founded on the liability of the carrier at common law."

Millington v. Railway, *supra*, was a suit to recover damages for failure to deliver household goods. The court said: "The contract of shipment was evidenced by writing signed by the company's agent. * * * The company pleaded the statute of limitations of two years in bar of the action. Held, The cause of action arises *ex contractu*. The suit is one to recover damages resulting from the breach of a contract, and is not one founded upon tort." It is true that the court then proceeded to hold, erroneously, that "debt" does not include "damages," and thereupon applied the wrong one of our two statutes of limitation of four years; but that fact, while it may be thought to detract from, does not destroy the force of its decision that the action was *ex contractu*—upon the bill of lading.

In Galveston H. & S. A. R. Co. v. Silegman, 23 S. W., 298, the court said: "Except in the recital or acknowledgment of the receipt of the goods and of their quantity and condition when received, bills of lading are strictly written contracts between the parties and come within the general rule which prohibits the introduction of parol evidence to contradict or vary such contracts," citing Hutch., Carr., para. 126.

In Gulf C. & S. F. Ry. v. Pickens, 58 S. W., 156, the court treated the bill of lading as a contract between the parties, such as would support special damages for breach thereof, saying: "By the terms of the contract sued on, the carrier was bound to carry the cotton with reasonable dispatch from Ladonia, Texas, to Dallas, Texas. * * * The damages which are recoverable upon the breach of a contract must be such as are the proximate result of such breach. * * * The damages here sought to be recovered are what are termed special damages, to recover which the petition must show that when the contract was entered into the carrier was put into pos-

session of such facts as reasonably indicated the result that would follow from a failure to carry and deliver to the Shippers' Press."

In Bessling v. Railway Co., 35 Texas Civ. App., 470, 80 S. W., 869, the court discussed the legal effect of a letter written by the shipper to the carrier's agent directing "that all our shipments, without exception, should go from Mexia to Galveston via all rail, and not by the Houston Direct Navigation Company," and of the oral reply of said agent, and held that the bill of lading which was issued afterward "evidenced and constituted the contract between the parties," and that as the bill of lading was silent on that point the carrier had a legal right to select the connecting carrier.

In Cohen Bros. v. Railway, 44 Texas Civ. App., 381, 98 S. W., 437, the court said: "A bill of lading is twofold in character: It is a receipt as to the quantity and description of the goods shipped, and a contract to carry and deliver the goods to the consignee upon the terms specified in the instrument. While it may not be varied by parol evidence (in the absence of fraud or mistake) so far as it embodies the terms of the contract, yet, so far as it constitutes a receipt, it is, like other receipts, subject to be contradicted or explained by proof of the facts,"—citing authorities.

In St. Louis & S. F. Ry. Co. v. Watkins, 45 Texas Civ. App., 321, 100 S. W., 162, a bill of lading was treated as a contract for carriage, and it was held that its recitals as to the condition of the goods were binding upon both carriers as partners.

Houston & T. C. Ry. Co. v. Groves, 48 Texas Civ. App., 45, 106 S. W., 416, was a suit for the value of goods in an interstate shipment under a through bill of lading, which the court treated as a contract limiting the liability of the initial carrier for damage or loss to such as might occur on its own line, and held that art. 3316 does not apply to interstate shipments, and that "where plaintiffs plead the contract of carriage, as in this case, its provisions inure to the benefit of defendant without being pleaded by it."

Davies v. Texas Cen. Ry. Co., 133 S. W., 295, involved facts very similar to those in the case before us, the fact that the bill of lading was accepted in writing by the shipper being, in our opinion, immaterial. There the court said: "A bill of lading may or may not impose some duty which does not arise under the common law. But whether it does or does not in any particular case, when the parties thereto reduce the implied contract to writing, it becomes a written contract and supersedes the implied contract which otherwise would have existed from the acts of the parties, and a breach thereof is a breach of a written, and not of a parol or implied, contract. 'A bill of lading is a contract entered into by the parties and is equally binding on both.' Schloss v. Railway, Co., 85 Texas, 602, 22 S. W., 1014. Being a written contract, the four years' statute will govern. In Cyc., which we find usually correct, the statement is made without qualification: 'Viewed with reference to the statute of limitations, an action against a carrier for injury resulting from a breach of contract for safe carriage is one of contract, and not of tort, and is therefore governed by the statute fixing the period within which actions for breach of contract may be brought.' 25 Cyc., p. 1033, para. 3.

This statement of the law is supported by reason and by authority;'' citing additional authorities.

In Sawyer v. El Paso & N. E. Ry. Co., 49 Texas Civ. App., 106, 108 S. W., 718, plaintiff sued for damages for personal injuries alleged to have been inflicted in New Mexico through the carrier's negligence, the petition containing two counts, one upon a contract made with several railway companies, including the defendant, for carriage of plaintiff from Pittsburg, Pa., to Los Angeles, Cal., the other in the ordinary form of an action by a passenger against a common carrier for damages for personal injuries. The court said: ''As has been seen from our statement of her pleadings, the petition contains two counts, one basing the action on a breach of contract; the other upon the commission of a tort. The allegations present a case where there is an overlapping of a contract and a tort—where the contract of carriage is undisputed, and all the facts essential to constitute the tort show at the same time a breach of contract. It is a case where an action as for a tort, or an action as for a breach of contract, may be brought by the same party, on the same state of facts. Cooley on Torts (2d ed.), 104-107; Webb's Pollock on Torts, 534, 46 Am. Rep., 688. In such a case it has never been denied that an action could be maintained for a breach of the contract; but the contention has always been that it could be only maintained on that ground, and not as for a tort.''

In many other cases this court and various Courts of Civil Appeals of this State have recognized and applied the doctrine of the foregoing cases concerning the nature and legal effect of bills of lading. Galveston, H. & H. Co. v. Allison, 59 Texas, 193; Texas & P. Ry. Co. v. Nicholson, 61 Texas, 495; Missouri Pac. Ry. Co. v. Harris, 67 Texas, 172, 2 S. W., 574; Gulf, C. & S. F. Ry. Co. v. McCorqudale, 71 Texas, 41; Missouri Pac. Co. v. Fagan, 72 Texas, 132, 9 S. W., 749; Texas & P. Ry. Co. v. Adams, 78 Texas, 374, 14 S. W., 666; Ft. Worth & D. C. Ry. Co. v. Greathouse, 82 Texas, 111, 17 S. W., 834; Gulf, C. & S. F. Ry. Co. v. McCarty, 82 Texas, 608, 18 S. W., 716; Bourland v. Choctaw, O. & G. Ry. Co., 99 Texas, 407; San Antonio & A. P. Ry. Co. v. Stribling, 99 Texas, 319; Texas & P. Ry. Co. v. Eastin & Knox, 100 Texas, 556; Railway Co. v. Vaughn, 16 S. W., 775; Missouri Pac. Ry. Co. v. Childers, 1 Texas Civ. App., 302, 21 S. W., 76; Missouri Pac. Ry. Co. v. Paine, 1 Texas Civ. App., 621, 21 S. W., 78; International & G. N. Ry. Co. v. Garrett, 5 Texas Civ. App., 540, 24 S. W., 354; Galveston, H. & S. A. Ry. Co. v. Short, 25 S. W., 142; Gulf, C. & S. F. Ry. Co. v. Eddins, 7 Texas Civ. App., 116, 26 S. W., 162; Atchison, T. & S. F. Ry. Co. v. Bryan, 28 S. W., 98; Missouri, K. & T. Ry. Co. v. Carter, 9 Texas Civ. App., 677, 29 S. W., 568; Missouri, K. & T. Ry. Co. v. Darling, 40 S. W., 550; Texas & P. Ry. Co. v. Avery, 19 Texas Civ. App., 235, 46 S. W., 897; Texas & P. Ry. Co. v. Byers, 73 S. W., 427; Gulf, C. & S. F. Ry. Co. v. Batte, 94 S. W., 345; Thompson v. Missouri, K. & T. Ry. Co., 103 Texas, 372, 126 S. W., 261. This list, though extended, is incomplete. The principles so upheld in this State are generally recognized and enforced. Atl. Coast Line R. Co. v. Mills, 219 U. S., 203, 55 L. Ed., 181, 31 L. R. A. (N. S.) 7, 31 Sup. Ct. Rep., 164; St. Louis, S. W. R. Co. v. Alexander,

33 Sup. Ct. Rep., 245; Cobb v. Brown, 193 Fed., 958, and cases cited; Bockserman v. Railway Co., Mo. App., 152 S. W., 389; Blackmer & Post Pipe Co. v. Railway Co., 137 Mo. App., 479, 119 S. W., 13; Lord & Bushnell Co. v. Railway Co., 155 Mo. App., 175, 134 S. W., 113; Cen. Dig., Vol. 9, Carriers, secs. 129-239; Dec. Dig., Vol. 4, Carriers, secs. 47-69, 207.

Concerning bills of lading Hutchinson on Carriers, third edition, section 157, says:

"Such instruments. are both receipts and contracts. So far as they acknowledge the delivery and acceptance of the goods, they are mere receipts. As to the rest, they are contracts, and are binding as such on the parties to them. In both characters they are of great importance to both shipper and carrier." And in section 167 it is said: "But bills of lading, except as to the recital or acknowledgment of the receipt of the goods and of their quality and condition when received, are strictly written contracts between the parties and come within the general rule which prohibits the introduction of parol evidence to contradict or vary such contracts"; citing many authorities.

To the same effect are Lawson on Contracts of Carriers, sec. 113, and cases cited; Redfield on Carriers, secs. 247-251; Story on Contracts, secs. 947-949.

The Texas cases which are cited in the brief of appellees in the case at bar do not support their contentions upon the point which we are now considering. They are as follows:

1. Galveston, H. & S. A. Ry. Co. v. Clemons, 47 S. W., 731, was an action against two railway companies for damages for failure to deliver household goods lost in transit. Appellant and the Mexican Central Railway, connecting carriers, were the only defendants, and the latter was dismissed upon its answer. Plaintiff's petition, which was filed March 13, 1897, a copy of which is before us, alleged, in substance, delivery of the goods on September 24, 1894, at Cleveland, Ohio, to the N. Y., L. E. & W. Ry. Co., which was alleged to have been an agent of defendants, consigned to one Safford, for delivery at Escalon, Mexico; that on said date defendants' lines, with other railways, formed a continuous and connecting line for the transportation of goods, merchandise, etc., between Cleveland and Escalon, over which all of them were accustomed to give and honor through bills of lading at through transportation rates, apportioning the receipts among themselves, and that when plaintiff so delivered said goods for shipment he received a through bill of lading therefor, and that a copy thereof is attached to and made part of said petition; that through negligence of the defendants a portion of said goods were lost and destroyed, to plaintiff's damage in the sum of $611.00; that on November 15, 1894, he seasonably made, at point of delivery, written claim and demand for said goods; that the box of goods so lost and destroyed contained valuable papers and wearing apparel of plaintiff and his wife, and that he has suffered great mental pain, moral degradation, and shame, and by reason thereof he could not appear in society, to his damage in the sum of $1000.00; and that plaintiff paid defendants at Cleveland, upon delivery of said goods for

shipment, certain reasonable freight charges. The petition contained other matters which need not be mentioned here. Plaintiff's prayer was for the value of said lost goods, for his damage, interest, costs of suit, and general relief. Appellant answered, excepting, specially, upon the grounds that damages could not be recovered for mental pain, moral degradation, shame, etc., and that the cause of action was barred by the two-years statute of limitation, and pleading general denial, said statute of limitation, and certain provisions of the bill of lading as exempting it from liability. The trial court sustained the first and overruled the second exception, and refused to submit to the jury the issue of limitation. Trial resulted in judgment against the carrier, from which it appealed. A copy of said petition, which was submitted to us by counsel for appellant in the case at bar, during his oral argument therein, has attached to it no copy of said bill of lading. But the opinion of the Court of Civil Appeals says that by its terms the initial carrier "agreed to carry plaintiff's goods to their destination, Escalon, Mexico, if on its road, otherwise to deliver to another carrier on the route to said destination; that the goods were delivered and received by the connecting carrier, to be transported and delivered to appellant (appellee?) at Escalon." It is true that said opinion also says that "the shipping receipt or bill of lading imposed no duty upon the appellant except that which arises from the common law, i. e., to safely transport the goods with reasonable dispatch and deliver them to the consignee at the point of destination." The expressions relative to delivery at Escalon may be thought to indicate that in the opinion of that court the contract was for through carriage, and that appellant, the G. H. & S. A. R. Co., a connecting carrier, was bound by it; but we do not so understand that opinion, taken in its entirety. Moreover, the bill of lading itself supports the first mentioned finding of that court, to the effect that the written contract was not for through carriage, Escalon not being on the line of the initial carrier, its obligation being, under the alternative clause in the contract, "to deliver to another carrier on the route to said destination."

Upon the whole we conclude that said bill of lading imposed no obligation upon any of the connecting carriers, and that their respective liabilities, if any, rested upon their common law or statutory obligations, and that consequently the cause of action in the Clemons Case was neither evidenced by nor founded upon the bill of lading, and could not have been maintained thereon, no matter in what form the plaintiff's petition, if setting up the facts, might have been drawn. The petition in that case does contain certain allegations which may have been intended merely as matter of inducement, but which may indicate an intention of the pleader to base the action upon the bill of lading; but other portions of it perhaps more strongly evidence a purpose upon his part to make it merely a declaration upon a tort, as for conversion of the goods, and the Court of Civil Appeals evidently so understood and treated it, the concluding portion of its opinion, which reviews both the pleading and the evidence, being as follows:

"The duty would have been the same had there been no shipping

contract. Its failure to discharge this duty, after receiving the goods for transportation, was in law a conversion of appellee's property, and his cause of action was one of tort founded upon such conversion, rather than of debt founded upon contract in writing, and should have been commenced and prosecuted within two years after appellant failed to deliver the goods as required by law, for it was then that appellee's cause of action accrued. Galveston, H. & S. A. Ry. Co. v. Roemer, 1 Texas Civ. App., 195, 20 S. W., 843; Martin v. Western U. Tel. Co., 6 Texas Civ. App., 619, 26 S. W., 136. As it appears from appellee's own pleadings and the uncontroverted evidence that the cause of action was barred by the statute of limitations when the suit was instituted, the judgment of the district court is reversed, and judgment here rendered in favor of appellant.''

Parenthetically, it will be observed that in submitting said certified question to us the Court of Civil Appeals says, in effect, that the question whether the cause of action stated in the case at bar comes under the two or under the four years statute of limitation was decided in the Clemmons Case adversely to the contention of appellant in the case at bar, but was decided in his favor in Davies v. Railway Co., 133 S. W., 295, and that they are unable to distinguish those two cases, or to distinguish the present case from either of them, upon said question of limitation. We think that a more careful reading of those cases will dispel the difficulty. The Davies Case involved an action against two railway companies and a receiver of one of them for damages for failure to deliver twelve bales of cotton which were alleged to have been part of a shipment of cotton under a bill of lading (which, as we have seen above, the court treated as a written contract) stipulating for the transportation of the cotton from Hico to Galveston. The receiver excepted to the petition as not showing that he was a necessary or proper party and said exception was sustained by the trial court and by the Court of Civil Appeals. It does not appear that either of the carriers denied liability, but each excepted to the petition as showing that plaintiff's cause of action was barred by the two years statute of limitation, and those exceptions were sustained by the trial court, from which judgment Davies appealed. The Court of Civil Appeals reversed that judgment and remanded the cause, holding that the cause of action as set forth in the petition was not ''an action of trespass for injury done to the estate or property of another,'' nor yet ''for detaining the personal property of another and converting such personal property to one's own use,'' and that therefore the two years statute of limitation, *supra,* did not apply; but that appellant's cause of action, as set forth in his petition, was governed by the above quoted four years statute of limitation. Rev. Stats., 1895, art. 3356, sec. 1.

As we understand those two cases, the distinction between them is this: In the latter the cause of action is both ''evidenced by'' and ''founded upon'' a written contract; in the former the cause of action is neither evidenced by nor founded upon a written contract, but arose *ex delicto.* Consequently, we rest our jurisdiction in the case at bar, not on conflict between those opinions (Rev. Stats., 1911, art. 1623), but upon the statement of the Court of Civil Appeals that they

deem it advisable, because of its general importance, to present to us the issue of law which is involved in said certified question. (Rev. Stats., 1911, art. 1619).

2. Ft. Worth & D. C. Ry. Co. v. McAnulty, 7 Texas Civ. App., 321, 26 S. W., 414, was an action under a special contract in writing for a through interstate shipment of cattle, signed by the shipper, stipulating that the carrier should be exempt from liability beyond its own line, the petition alleging injury to some of the cattle because the cars were not properly bedded, and were handled improperly and were delayed, and the cattle kept crowded and standing in the cars without food or water, etc., by reason of which some died, and others depreciated in value, etc. The court said:

"It will thus be seen that plaintiff's cause of action in this case is essentially one *ex delicto,* for the breach on the part of appellant of that duty which it owed as a common carrier, rather than for the violation of a special contract between it and appellee; and we are of the opinion that, if appellant caused damage to the property of appellee in the manner alleged in this petition, it was clearly guilty of a trespass within the meaning of our statute of limitation set forth above"; referring to Rev. Stats., 1879, art. 3203, sub. 1.

3. Galveston, H. & S. A. Ry. Co. v. Roemer, 1 Texas Civ. App., 195, 20 S. W., 843, plainly recognized that the passenger's ticket constituted a contract, but held that his cause of action was for a tort committed by the carrier in wrongfully inducing him to leave its train at a point other than that called for by his ticket. The court said:

"The basis of this action rests, not upon the naked violation of the contract to safely put the passenger down at the station agreed upon, but for the personal injuries received by the passenger, growing out of negligent failure of the appellant to perform its duty to the appellee, and for the willful conduct of the servants of appellants in inducing appellee to leave the train at the point other than his destination"; and quoted approvingly from New Orleans J. & G. N. R. R. Co. v. Hurst, 36 Miss., 667, 74 Am. Dec., 785, to which we refer below.

4. Kansas City S. Ry. Co. v. Grain Co., 114 S. W., 441, was a suit for negligent loss of goods by fire after they had been delivered to the carrier, which issued a through bill of lading thereon. The trial court rendered judgment in favor of the plaintiff grain company. Of the three grounds relied upon by the appellant for a reversal therein the only one which is in anywise relevant here was that "there was a variance between the cause of action as pleaded and the facts as proven, and for that reason there was no basis for the judgment rendered by the court." The court said:

"Had this been a suit to recover damages for the breach of a contract for failing to transport the cars named to their respective points of destination, or had the exact consideration pleaded been a material fact in the case, it would have presented a different question. This, however, is an action, not for the breach of a contract growing out of a failure to deliver the goods, but for the recovery of a fixed sum for the loss of the goods by fire after they were delivered to and received

by the carriers; and it is therefore wholly immaterial what the ultimate destination of the freight was or what was the exact consideration to be paid for the services undertaken by the appellant. It is sufficient if it be alleged and proven that the appellant was a common carrier, that for a valuable consideration it undertook to transport the cars of grain, and that they were delivered to and received by it for that purpose, and, after such delivery, while in the hands of the appellant, were destroyed by fire. We think those facts are sufficiently alleged and proven to at least form the basis of judgment.''

We find in the original opinion no other expression upon that point. However, upon motion for rehearing, which was overruled, the court referred to the contention of appellants that ''the plaintiff's petition showed upon its face an action based on a contract for the carriage of goods, and not an action in tort to recover on a common law liability,'' and then said:

''The principle of law underlying the appellant's contention is undoubtedly correct; but we do not think it is applicable to the pleadings and facts involved in this case. It is an old rule of practice which permits one who has sustained an injury by any wrongful act or omission in the transportation of freight, for which a common carrier may be held responsible, to seek compensation in an action in tort or to sue upon the contract of carriage. 3 Hutchinson on Carriers, p. 1570. Formerly, in those jurisdictions where the common law distinctions between forms of action were observed, if one elected to sue upon the contract, he could not recover upon proof which would sustain only an action in tort. On the contrary, if he should elect to sue in tort, his right of recovery would be restricted to proof of the facts alleged. 3 Hutchinson on Carriers, para. 1324 et seq. We do not think the same degree of strictness in the construction of pleadings should obtain in a jurisdiction like ours, where all technical forms of action are abolished, and where each suit is a special action on the case, as will in those jurisdictions where the common law forms of pleading are still observed. The case here presented is not one in which one contract is alleged and another proven; but the question is: Are the averments of the pleadings such as to warrant the introduction of evidence to show the breach of a duty imposed by law? In other words, *was the identity of the cause of action as stated so distinctively marked as to classify it as resting solely upon the contract of carriage, or is the language used such as to permit proof of facts showing a breach of a legal duty?*''

The court then said that while the petition alleged the making of the contract of carriage it did so in certain language from which that court found that ''the dereliction upon which the plaintiffs in the court below relied for a recovery of their damages was not the failure to perform the service of delivery at the points of destination, the contractual duty, but in negligently permitting the grain to be destroyed by fire while in their custody. In other words, it alleged a bailment of the goods to the appellants, and a damage resulting from its legal liability as such bailee, but misstated the terms of contract of bailment. Where one has charge of the goods of another under a contract of bailment, and after obtaining such possession tortiously

converts them to his own use, or negligently permits their destruction under such circumstances as would render him liable to the bailor for the value, if the suit for such value is brought specifically for the loss occasioned by the destruction or conversion, the details of the contract of bailment—the services which were to be performed thereunder—are immaterial, in an action for the value of the article, as affecting the right of recovery. Allegations regarding those details in such cases should be treated merely as matter of inducement; and in the introduction of testimony a strict adherence to details as pleaded should not be required. We think the pleadings in this case show that the basis of the suit was for the negligent loss of the grain, and not for the failure to transport to the points of destination.'' ·

It seems that thus far in that case the court correctly analyzed the pleadings and the facts, and properly applied the law. If so, the liability of the carrier for negligently permitting destruction of the grain by fire did not arise out of the special contract evidenced by the bill of lading, but from a tort involving, rather, failure of the carrier to fulfill its common law obligation; and, if the declaration was not clearly and unequivocally upon such tort, it at least did not clearly appear that the plaintiff had elected to sue upon the contract, and the court was thus left free to construe the petition as declaring solely upon such tort, and the court so construed it, citing: Central Ry. Co. v. Portrait Co., 122 Ga., 11, 49 S. E., 727, 106 Am. St. Rep., 87; Whittenton Mfg. Co. v. Packing Co., 21 Fed., 896; New Orleans etc. Ry. Co. v. Hurst, 36 Miss., 660.

We therefore cannot see that the proper disposition of the motion or even the decision of that case called for any expression by the court upon the point involved in the subsequent discussion wherein it said:

''What are termed 'contracts for the carriage of freight,' usually evidenced by a bill of lading, stand in the class to themselves, and the bills of lading are now practically no more than mere receipts for the goods. They are contracts only in name. When the freight is delivered to the carrier, either actually or constructively, with directions as to its destination, the carrier's liability at once arises, and its duties are fixed by law, and not by the terms of the contract. It may even exist in opposition to the very terms of the contract. The rate the carrier must charge is or may be fixed by law. It appears that about the only option the carrier can exercise in this State in intrastate shipments is that of demanding or waiving the payment of the freight charges in advance. Why call a transaction a contract when either of the parties is deprived of the elements of freedom so essential to entering into a binding agreement? If the liabilities of the carriers are fixed by law in all cases, then a failure to perform those duties is the breach of a legal duty, and not of a contractual obligation.''

Our general conclusion is that a bill of lading when delivered, constitutes, within the meaning of our said statutes of limitation, a contract in writing between the common carrier and the shipper, binding alike upon both except in particulars, if any, wherein it contravenes constitutional or statutory provisions or public policy.

Second. Is each of the connecting carriers liable in this cause

under the through bill of lading—the written contract? Inasmuch as the initial carriers, the St. L. S. W. Ry. Co. of Texas, issued said bill of lading, it is unquestionably bound; but the liability of the connecting carrier, the I. & G. N. R. Co., if any, depends upon other considerations.

In Gulf C. & S. F. Ry. Co. v. Dwyer, 75 Texas, 572, which was decided in 1890, this court said:

"Our statutes make it obligatory upon every railroad company in this State to draw over their road without delay the passengers, merchandise, and cars of every other railroad company which may enter and connect with their road. Rev. Stats., art. 4251; see also arts. 4226, 4227, 4251, 4254. In the absence of a provision of this character it might be proper to hold that a carrier who has received freight from another carrier upon a through bill of lading, without any express agreement as to the charges, should be presumed to have ratified the bill of lading, though made without its authority, and to have become a party to the contract. But certainly when the carrier is bound by statute to receive and transport the goods without delay upon tender by the connecting carrier no such presumption should be indulged. Such a rule would be to force a contract upon a carrier to which he had not given his consent, and compel him to carry at a rate fixed by another company. The result of the construction of the law by the court below is that a railroad company is not permitted to refuse to receive the goods for transportation, yet if it does receive them it ratifies by that act a bill of lading made without its authority. This, in our opinion, can not be tolerated. We so held at the last Tyler Term in a case not yet reported."

The then unreported case so referred to was Gulf C. & S. F. Ry. Co. v. Baird, 75 Texas, 256. In deciding it this court said:

"A railway company cannot be held to have ratified a contract from the fact that it performed some of the service contemplated by it, when it is not at liberty, contract or no contract, to refuse to render the service." This doctrine was approved and followed in Ft. Worth & D. C. Ry. Co. v. Wililams, 77 Texas, 121. To the same effect are Miller & Co. v. Railway, 83 Texas, 518, 78 S. W., 954 and Gulf C. & S. F. Ry. Co. v. Dwyer, 84 Texas, 194.

However, since those decisions were rendered our Legislature enacted the following statutes, which are still in force:

"Art. 331a. All common carriers over whose transportation lines, or parts thereof, any freight, baggage or other property received by either of such carriers for through shipment or transportation by such carriers between points in this State on a contract for through carriage recognized, acquiesced in or acted upon by such carriers shall, in this State, with respect to the undertaking and matter of such transportation, be considered and construed to be connecting lines, and be deemed and held to be the agents of each other, each the agent of the others, and all the others the agents of each, and shall be deemed and held to be under a contract with each other and with the shipper, owner and consignee of such property for the safe and speedy through transportation thereof from point of shipment to destination; and such contract as to the shipper, owner or consignee

of such property shall be deemed and held to be the contract of each of such common carriers; and in any of the courts of this State any through bill of lading, waybill, receipt, check or other instrument issued by either of such carriers, or other proof showing that either of them has received such freight, baggage or other property for such through shipment or transportation, shall constitute prima facie evidence of the subsistence of the relations, duties and liabilities of such carrier as herein defined and prescribed, notwithstanding any stipulations or attempted stipulations to the contrary by such carriers. or either of them.

"Art. 331b. For any damage for injury or damage to or loss or delay of any freight, baggage or other property sustained anywhere in such through transportation over connecting lines, or either of them, as contemplated and defined in the next preceding article of this law, either of such connecting carriers which the persons or persons sustaining such damages may first elect to sue in this State therefor shall be held liable to such person or persons; and such carrier so held liable to such person or persons shall be entitled in a proper action to recover the amount of any loss, damage or injury it may be required to pay such person or persons from the carrier through whose negligence the loss, damage or injury was sustained, together with costs of suit."

This court construed said statute in Galveston, H. & S. A. R. Co. v. Jones, 134 S. W., 328, which involved an action for damages to a shipment of cattle from Caesar through Robstown to Placedo, all on the line of the appellant, the initial carrier, and thence to Standart, a station on the line of a connecting railway. The original agreement under which the movement of the cattle began was a parol contract which provided that the initial carrier should transport the cattle over its own line from Caesar to Placedo, where it was to deliver them to its connecting carrier, to be by it transported to Standart, and that the cattle should be shipped through in the same cars. At Robstown an agent of the initial carrier, acting for it, entered into a written contract—issued a bill of lading—by which that carrier undertook to transport the cattle to Placedo, there to be delivered to the connecting carrier, which waybilled the cattle to their destination. At Placedo there arose between the carriers a controversy concerning the transfer of the cattle from one line to the other, in consequence of which they were there unloaded from the cars of the initial carrier and reloaded into the cars of the connecting carrier, which hauled them to Standart. Injuries to the cattle occurred in so transferring them, and in transporting them from Placedo to Standart. In deciding the case this court said:

"The Court of Civil Appeals held that the contract of shipment made between the defendant in error and the St. Louis, Brownsville & Mexico Railway Company constituted a through shipment from Caesar on the road of the said company to Standart over the line of the Galveston, Harrisburg & San Antonio Railroad Company, and that the latter road acted upon and recognized said contract, therefore, that the case comes within the terms of article 331a, Rev. Stats., 1895." * * *

"Upon its face the contract of shipment expresses the agreement to be that the first company is to transport the cattle to the end of its line at Placedo and there to deliver the same to the Galveston, Harrisburg & San Antonio Railroad Company, limiting the liability of each company to damages arising upon its own line. To bring a contract of this character within the terms of article 331a, the contract entered into by the first carrier must be for carriage from the point of shipment to the destination, and the shipment must be received and carried by the connecting carrier under that contract. There being in this case no contract for through shipment, the fact that the second company received and transported the cattle is not sufficient to create the joint liability declared by article 331a, and the Court of Civil Appeals erred in so holding. In order to bind the second or subsequent companies jointly with the first, or with any of the other companies, there must be something more than receiving and transporting the goods, or property, because the law requires the carrier to so receive and transport such freight when tendered to it. Ft. Worth & D. C. R. R. Co. v. Williams, 77 Texas, 125, 13 S. W., 637. The Court of Civil Appeals erred in its construction of article 331a.''

It will be observed that by its own express terms, as pointed out in the last mentioned decision of this court, the effect of this statute is limited to cases in which there is a contract for through carriage which has been "recognized, acquiesced in or acted upon" by such connecting carriers. Now, where that status exists there is no reason for the application of the rule which was announced in the Baird case, *supra,* and the cases following it. There is, therefore, no conflict whatever between said articles 331a and 331b and those decisions. But does the action in the case before us lie within the scope of that statute or does it lie within the effect of those decisions?

In the present attitude of this case the allegations of the petition afford the proper and only test and determine the status, the sole assignment of error being predicated upon the action of the trial court in sustaining the carriers' exception and dismissing the case.

We think it is clear that the allegations of the petition, wherein it is stated that "said shipment was made at agreed and through rates for the whole route, and said bill of lading was recognized, acquiesced in and acted upon by both of said defendant railroads," etc., place this case as to the connecting carrier, the I. & G. N. R. R. Co., squarely within the scope and operation of said articles 331a and 331b.

We accordingly hold that under the allegations of plaintiff's petition in this case each of the appellees is bound by the written contract for through carriage of the cotton.

Third. Is appellant's cause of action in this case either "evidenced by" or "founded upon" said written contract—the bill of lading?

For the reason assigned above, the trial court having sustained the exceptions of appellees to the effect that this case is governed by said statute of limitation of two years, this issue, which relates solely to the form of the action, must also be tested by the allegations of plaintiff's petition.

Said petition embodies averments which are appropriate in a

declaration upon a written contract, many of them being inconsistent with any other idea. It alleges that a through bill of lading was issued; that it was assigned to plaintiffs, and that they are the owners thereof and of all rights thereunder, and that the damages complained of was caused "by the breach of the contract of carriage entered into in writing between the plaintiffs and the defendants under said bill of lading." It alleges twice, once in connection with the averment that the shipment was made at an agreed and through rate for the whole route, and again in connection with the averment that said damage was caused by the breach of the written contract of carriage, that the bill of lading was "recognized, acquiesced in and acted upon by both of said defendant railroads." It alleges damages in a specific amount by reason of defendants' failure to deliver the cotton, and prays judgment accordingly. It alleges that at plaintiff's request the bill of lading was deposited with the I. & G. N. R. R. Co., and it notifies both of the defendants to produce said bill of lading at the trial of the cause. It does not allege a demand for the cotton.

For the reasons which are stated by the Court of Civil Appeals with admirable clearness and force in the Davies case, *supra,* it cannot fairly be said that said petition states either a case of "trespass" or a case of "conversion." As said there, and amply supported by citation of authorities:

"Trespass does not arise 'from the mere omission to do a duty.'" * * * "'It must be an act committed, as contradistinguished from an act omitted.'" * * * "A very long delay in the delivery of the cotton is shown, but no delay in delivering, so long as the carrier safely keeps the property, will amount to a conversion; but under such circumstances, there must be a demand and a refusal to deliver, in order to constitute a conversion. * * * A conversion implies a wrongful act; a mere non-delivery will not constitute a conversion."

In support of their above stated contention as to the form of the action in the case at bar appellees cite New Orleans J. & G. R. R. Co. v. Hurst, 36 Miss., 660, 74 Am. Dec., 784, which arose under facts similar to those in the Roemer case, *supra,* and was similarly decided. This Mississippi case was quoted from, approvingly, in Railway v. Levy, 59 Texas, 542; it call the ticket the "contract of carriage"; it calls attention to the liberal system of pleading under which distinctions between actions are abolished and the substance of the declarations as a whole controls, and determines the character of the action, in consequence of which the courts hold the action in a particular case to be one of tort, or one of contract, according to the character of remedy, indicated by the facts alleged, and as may be requisite to the fullest redress which the law permits; it states the tendency of the courts, upon these considerations, to be to consider actions against common carriers as sounding in tort; but it distinctly recognizes that such rule does not apply to a case wherein the petition expressly declares and relies upon a special contract; and we, also, quote from it as follows:

"Under our system of pleading, the formal distinctions between actions are abolished, and the declaration states the facts which con-

stitute the cause of action, plainly, distinctly, and substantially. In determining, therefore, the character of the action, we look to the substance of the whole statement, and not to the mere formal language in which it is expressed. We have regard to the facts constituting the cause of complaint and afford the plaintiffs the most ample redress and relief which the facts will justify, consistent with a due regard to the rights of the defendant. It is the policy of our system to trammel the rights of the parties as little as possible by the technicalities of mere form, but so to shape the pleadings as to bring before the jury the very right of the matter in issue between them, without unnecessary delay or expense. Hence, when the facts are plainly and distinctly stated, the action will be regarded as either in tort or contract; having regard: 1. To the character of the remedy such facts indicate; and, 2. To the most complete and ample redress which, upon the facts stated, the law can afford.

"The character of the action must be determined by the nature of the grievance, rather than the form of the declaration.

"And in cases of this character (against common carriers), the courts are inclined to consider it as founded in tort, unless a special contract very clearly appears to be made the gravamen and object of the complaint in the declaration. These doctrines are very clearly and distinctly announced in the case of Heirn v. McCaughan, 32 Miss., 39 (66 Am. Dec., 588), and the authorities cited, and meet our unqualified approbation.

"The case before us presents, under these views, the inquiry whether this declaration seeks to recover damages for the breach of the contract stated therein, or whether the wrong and injury complained of was that the defendant in error, after acquiring the right to travel on plaintiffs' cars by contract to a certain depot, while lawfully in the enjoyment of that right, was 'compelled' to leave said cars at a distance from the place of his destination, by the defendant.

"The contract is stated as inducement to the action, as the foundation of defendant's right to be on the cars; to show that defendant in error was lawfully there. The declaration next shows that without the consent and against the remonstrances of the defendant in error, he was forcibly carried beyond the point where it was the plaintiffs' duty to have allowed him to stop. The declaration next shows a further violation of defendant's rights and plaintiffs' duty in the fact that, after request by the defendant, plaintiffs refused to back the train to the place where it should have stopped. And lastly, the declaration shows that plaintiffs in error compelled defendant to leave the train at a great distance from the place where he should have been allowed to get off.

"Here is not only a breach of the contract and a violation of public duty, by the plaintiffs in error as a common carrier, but a willful and forceable wrong. The case is therefore much stronger for the defendant in error than were the facts in the case of Heirn v. McCaughan, 32 Miss., 1 (66 Am. Dec., 588). A violation of a general duty to the public was in that case regarded as sufficient to determine the character of the action, as one founded in tort and not in contract, and sufficient to authorize the jury in awarding exemplary damages.

The decision in that case is conclusive of the question presented in this as to the form of the action, as well as the right of the jury in such cases to protect the public by punitive damages against the negligence, folly, or wickedness which might otherwise convert these great public blessings into the most dangerous nuisances."

Whatever election of remedies appellant may have had, at any time, under the facts of this case, it is evident that its petition does not even attempt to state a cause of action *ex delicto*. We are of the opinion that said petition sets out a cause of action which is both evidenced by and founded upon a contract in writing for the through transportation of the cotton which, under the allegations of the petition, is binding upon both of the carriers, and that this case, as made by said petition, is governed by the above quoted four years statute of limitation, and that said two years statute of limitation does not apply.

We answer the certified question affirmatively.