## LAWRENCE v. CANANEA CONSOL. COPPER CO., S. A., et al. (No. 1265.)

(Court of Civil Appeals of Texas. El Paso. Jan. 19, 1922. Rehearing Denied Feb. 23, 1922.)

1. Sales ⊚⇒77(2) — Correspondence held to show contract for seller to pay freight charges.

In an action by a purchaser of sugar to recover freight charges, correspondence *held* to show an express contract in writing for the delivery of sugar, free of any charges except the contract price, less freight per car to a certain point.

2. Brokers ⊚⇒8(2) — Broker's authority in making sale of sugar sustained.

In an action by a purchaser of sugar to recover freight charges which he had been compelled to pay, contrary to the contract of sale, evidence *held* to sustain a finding that the broker through whom the sugar was purchased was authorized to make the contract of sale on defendant's behalf.

3. Brokers ⊚⇒94—Broker need not have written authority from principal to bind him in sale of sugar.

A broker selling sugar for his principal need not have written authority from such principal to enable him to bind the principal in a sale.

4. Limitation of actions ⊚⇒24(4) — Suit on written contract to recover freight charges paid held not barred by two-year statute.

In an action by a purchaser of sugar to recover freight charges expended, the indebtedness being founded on an express contract in writing, *held* within Rev. St. art. 5688, par. 1, and not within the two-year statute of limitations.

5. Action ⊚⇒45(4)—Causes of action for payment of freight charges, shortage, and demurrage held properly joined.

In an action by a purchaser of sugar to recover freight charges paid by him, though not required by the contract, and for a shortage in the amount of sugar shipped, together with demurrage charges brought against the broker and his principal, *held*, there was no misjoinder of causes of action.

6. Brokers ⊚⇒106 — Joinder of broker and principal as defendants held proper.

In an action by a purchaser of sugar against the seller and a broker in the alternative, praying that, if the broker was merely the agent of the seller, judgment might be had against the seller, but if the broker was acting for himself that judgment might be had against him, *held* not defective for misjoinder of parties.

7. Action ⊚⇒45(1)—Rule as to misjoinder of causes of action should be construed with rule for avoidance of multiplicity of suits.

The rule forbidding misjoinder of causes of action is a rule of convenience and expediency, and should be construed with the broader rule for avoidance of multiplicity of suits.

8. Sales ⊚⇒407—Seller's ignorance of excess of freight charges held not a defense in action by buyer to recover charges paid.

In an action by a purchaser of sugar to recover advance freights or ocean charges which he had been compelled to pay, contrary to the requirement of the contract, want of knowledge on the part of the seller of the excess of such charges *held* not available as a defense.

9. Trial ⊚⇒321—Parties need not be notified to be present when verdict returned or judgment entered.

The statute does not provide notice to be given to either party to be present when a verdict is returned.

10. Judgment ⊚⇒276—May be entered without notice to defendant.

In an action on a contract, it was not reversible error to enter judgment on the verdict without notice to defendant, the judgment conforming thereto.

11. Appeal and error ⊚⇒1050(2)—Admission of letter relating to other transaction, if error, held harmless.

In an action by a purchaser of sugar to recover freight charges which he had been compelled to pay, contrary to the provisions of the contract, admission of a letter from defendant to plaintiff regarding advance charges and demurrage in a different transaction prior to the one sued upon, if error, *held* harmless.

12. Evidence ⊚⇒353(8)—Documents held not inadmissible because in Spanish.

In an action by a purchaser of sugar to recover freight charges which he had been compelled to pay, contrary to the contract, freight bills and receipts, *held* not inadmissible because they were partly in the Spanish language, there being sufficient English words to make them intelligible, especially in view of explanations by witness.

Appeal from El Paso County Court at Law; J. M. Deaver, Judge.

Suit by the Cananea Consolidated Copper Company, S. A., and others against C. H. Lawrence and others. Judgment for plaintiffs against defendant named, and he appeals. Affirmed.

M. W. Stanton, of El Paso, for appellant.
Volney M. Brown, S. J. Isaacks, and E. M. Whitaker, all of El Paso, for appellees.

WALTHALL, J. Appellee Cananea Consolidated Copper Company, S. A., a corporation engaged in mining and mercantile business in Mexico, and operating stores under the name of "Cananea Stores," brought this suit on March 24, 1917, against C. H. Lawrence, D. T. White, and John H. Grant, the last-named two composing the partnership of White-Grant Company to recover $514.32, with interest from November 29, 1913. Appellee sued in the alternative that, if White-Grant Company were not agents of

Lawrence, but were acting for themselves, appellee have judgment for said amount against White-Grant Company.

The pleading and evidence are quite voluminous, but the material facts pleaded and shown in the evidence amount, substantially, to the following: In November, 1913, C. H. Lawrence was a wholesale grocer, and doing business as such in El Paso, Tex., and bought and sold sugar. White-Grant Company were merchandise brokers, and acting as such in selling sugar. The following correspondence by letter and telegrams passed between appellant and White-Grant Company:

"October 31, 1913.

"White-Grant Co., El Paso, Texas—Dear Sirs: Please quote us on 2,000 sacks German cube sugar, f. o. b. New Orleans in bond, or in transit New Orleans, that can be diverted before reaching El Paso.

"Yours truly,     Cananea Stores."

White-Grant Company replied by telegram as follows:

"Nov. 3d, 1913.

"Agent The Cananea Stores: Answering letter thirty-first can secure two thousand bags German cubes at three ninety to arrive here in about ten days. Can divert on New Orleans. Lawrence has only three thousand bags coming in this lot. Can you use it all. Last in sight for some time.     White-Grant Co."

Again:

"El Paso, Texas, Nov. 3, 1913.

"Agent Cananea Stores, Naco, Arizona. Referring to day's lettergram reduce our quotation to three eighty eight. Want the business. Explaining change in price by letter.

"White-Grant Company."

Again, telegram (date not given):

"White-Grant Co., El Paso, Texas. Accept offer for three thousand bags. Advise by wire if each can come forward on separate bond before making diversion of entire shipment.

"Cananea Stores."

Again, a letter:

"The Cananea Stores Department of the Cananea Consolidated Copper Co., S. A., Cananea, Sonora, Mexico.

"Nov. 4th, 1913.

"Purchase Order.     (Quote this in invoice.) No. 24401.

"The White-Grant Co., El Paso, Texas: Please forward by freight the following (subject to the instructions printed on the back of this order) confirming our wire of this date through Naco, Arizona: 3,000 bags German cube sugar, at $3.88, f. o. b. El Paso, cars to be diverted before reaching El Paso, giving us the benefit of through rate from New Orleans. Freight allowance New Orleans to El Paso to be allowed on invoice. Mail to us at Cananea the original and duplicate invoice and the bills of lading. Mail to Brokerage Department, S. P. de M. to Cananea. Unless you can accept the conditions of our instructions, please return this order to us promptly, unfilled.

"Cananea Stores."

On the reverse side of the letter were instructions relative to the method of making the invoices.

Plaintiff alleged that, pursuant to the above contract, defendants delivered to it six cars of sugar, for the value of which defendants, through C. H. Lawrence, drew six drafts, aggregating the sum of $10,129.86, on the Cananea Stores, payable to the State National Bank of El Paso, with bills of lading and invoices on said goods attached, and that, in order to receive said goods when same arrived at Cananea, it was compelled to take up and pay said drafts. It was alleged that, instead of paying all the freight on said sugar in excess of the freight on same from El Paso, Tex., to Cananea, as agreed, defendants shipped the same to plaintiff, and failed to pay the advance charges of freight on said goods, chargeable against said goods, which freight was due on said goods prior to the time it arrived in New Orleans, said sugar having originated in shipment from Germany, and that, upon its arrival at Cananea, plaintiff was charged by the railroad with said advance freight, and that same had to be paid by plaintiff before it could receive same, even after the payment of said drafts, which said excess charges amounted to $502.32. Plaintiff also alleged demurrage charges of $12 resulted through failure of defendants to promptly forward the invoices and bills of lading.

Plaintiff further alleged a shortage of five sacks of sugar, the value of which, with the duty and freight, amounted to $29.80. Plaintiff alleged, in the alternative, that, if White-Grant Company were merely the agents of Lawrence in the sale of the sugar, it prayed judgment against Lawrence.

Lawrence answered by exceptions, general denial, that the telegrams, letters, and writings pleaded by plaintiff were not signed or accepted by him or by any one for him, that he was in no way connected with the same, denied that he ever agreed to repay the sums of money which plaintiff had paid out, denied that he ever authorized White-Grant Company to act for him in the transaction or in any manner to bind him, and denied that he or his codefendants knew of the prior freight or advance charges prior to and at the time of the sale of the sugar, and denied liability for same. He pleaded the statute of limitation of two years.

White-Grant Company answered by special exceptions, general denial, and alleged that they were acting merely as brokers for Lawrence, and quoted the prices of the sugar to plaintiffs as such brokers with the authority and consent and at the instance and request of Lawrence; that Lawrence received the entire consideration paid by plaintiff, and paid them only brokerage charges; pleaded that Lawrence acted upon and accepted their services, ratified and confirmed their acts, re-

ceive the benefit, and is estopped to deny their authority to act.

The case was tried with a jury, and submitted on special issues. The jury found:

First. That Lawrence placed the sale of the sugar involved in this suit with the White-Grant Company.

Second. That Lawrence held out the White-Grant Company as his agents in the sale of the sugar to the Cananea Stores.

Third. That Lawrence, after White-Grant Company made the sale of the sugar in question to the Cananea Stores, knew of the terms and conditions of the sale at the time he drew the drafts on the purchaser and forwarded the bills of lading and invoices to the Cananea Stores.

Fourth. The amount of the advances and charges accruing before the arrival of the sugar at El Paso, over and above the railroad freight to El Paso, and paid by the plaintiff, was $500.70.

The court rendered judgment in favor of plaintiff and against Lawrence for $710.99, with interest from the date of the judgment, January 20, 1921, and costs. Judgment was entered for White-Grant Company that they go hence without day and recover their costs of plaintiff. Lawrence prosecutes this appeal.

[1] The court was not in error in submitting the issues to the jury and refusing to instruct the jury in Lawrence's favor as complained of in the five propositions under the first and second assignments. The correspondence by letters and telegrams as above, the drawing of the drafts and their payments, and the unpaid freight charges on the sugar before it reached New Orleans, and its payment by plaintiff and the necessity for its payment before plaintiff could receive the sugar from the railroad company, and the amount of it, are all undisputed facts. The letters and telegrams show an express contract in writing for the delivery of the sugar to plaintiff, free of any charges (f. o. b. cars El Paso) save and except the contract price of $3.88 per 100 pounds paid by plaintiff to Lawrence through his drafts, less the freight per car to El Paso.

The propositions presented and discussed by appellant, of voluntary payment of the advance freight charges on the sugar before same reached El Paso, either as to pleading or proof, have no application to the facts here. There was simply a breach of appellant's contract to deliver the sugar f. o. b. cars El Paso. Ehrenberg v. Guerrero, 225 S. W. 86, and cases cited.

[2] The sixth proposition under the first and second assignments asserts that it appears from the undisputed evidence and pleadings that the White-Grant Company were not authorized to make the contract of sale of the sugar binding upon appellant. The proposition is not sustained by the record. We have above sufficiently stated the pleading. White acted for White-Grant Company in making the sale. He testified that in making the sale of the sugar he was acting as a broker, and that his company was acting for Lawrence, and that he quoted the terms and prices Lawrence gave him after talking with Lawrence; Lawrence made no sale of the sugar other than that made by White-Grant Company; that he advised Lawrence of the contents of the telegrams and confirmations. Lawrence accepted the terms of the sale, and drew his drafts for the proceeds, and forwarded the bills of lading and invoices. The issues were sufficiently submitted to the jury on the pleading and proof, and the jury found in favor of appellee.

[3, 4] It was not necessary that White-Grant Company should have written authority from Lawrence to enable him to bind him in the sale of the sugar. Texas Moline Plow Co. v. Klapproth, 164 S. W. 399, and authorities cited. As found by the jury, Lawrence orally gave them permission to sell the sugar to the Cananea Stores, and they made the sale through the correspondence above stated. The suit was not barred by the two-year statute of limitations, as insisted by appellant under a number of propositions. Plaintiff's suit was filed on the 24th of March, 1917. The suit was an action for debt, the indebtedness being founded upon an express contract in writing, and not an implied contract, and comes under the first paragraph of article 5688, R. S. The question has been settled, we think, against appellant's several contentions, by our Supreme Court in Elder, Dempster & Co. v. St. L. S. Ry. Co., 105 Tex. 628, 154 S. W. 975, and Martin v. Roberts, 57 Tex. 564. The bill of lading referred to in appellee's acceptance was in writing, and, under Elder-Dempster Co. v. Railway, supra, was itself a contract in writing, made so by our statute. G., H. & S. A. Ry. Co. v. Jones, 104 Tex. 92, 134 S. W. 328.

[5, 6] We think there is no misjoinder of parties or causes of action. San Angelo Cotton Oil Co. v. Houston County Oil Mill & Mfg. Co., 185 S. W. 887; Garner v. Jamison, 162 S. W. 941; Jewett State Bank v. Corsicana National Bank, 167 S. W. 747; Adams v. First National Bank, 178 S. W. 993.

[7] The rule forbidding misjoinder of causes of action is a rule of convenience and expediency, and should be construed with the broader rule for avoidance of multiplicity of suits. Paul v. Sweeney, 188 S. W. 525; Rowland v. Klepper, 189 S. W. 1033. A number of appellant's propositions are based upon the theory that the unpaid charges for freight were not covered by the contract with appellant. We think the contract covered the unpaid charges. The allegations in the petition were sufficient, we think, and were not subject to the several exceptions made by appellant. We need not discuss these exceptions separately. The contract price for

the sugar f. o. b. cars El Paso covered all costs to appellee except the freight from El Paso to destination and the price agreed to be paid for the sugar.

[8] We have carefully considered the special charges requested by appellant and refused by the court, and are of the opinion that the court was not in error in overruling them. Lawrence did not plead over against White-Grant Company, and some of the issues requested to be submitted were not made issues by the pleadings of appellant. Want of knowledge on the part of Lawrence of the fact of the advance or ocean charges previous to the arrival of the sugar at El Paso was not available as a defense, we think. We think, also, that, the contract calling for the sugar to be delivered to appellant f. o. b. cars El Paso, the question as to whether notice was given to Lawrence of the unpaid freight charges before reaching El Paso was immaterial, and not a defensive matter. The rights of the respective parties under the contract must be determined by the terms of the contract itself.

[9] It appears that, after the verdict had been returned by the jury, the court, without motion, and without notice to appellant, entered judgment on the verdict. It further appears that, for some reason not disclosed, appellant was not present when the verdict was returned or judgment entered. Appellant filed a motion to set aside the judgment because, among other reasons, neither appellant nor his attorney was notified of the judgment entry, and the overruling of the motion is made the basis of assignments of error. The statute does not provide notice to be given to either party to be present when a verdict is returned or judgment entered. It is only where a mistake in a judgment is corrected that notice must be given.

[10] We think it was not reversible error for the court to enter judgment on the verdict without notice to appellant, the judgment conforming thereto. It was the duty of the court to either set the verdict aside and grant a new trial, or to enter judgment thereon. The view we entertain of it is that appellant was not prejudiced in any way by the entry of the judgment. Scott v. F. & M. National Bank, 66 S. W. 485.

[11] The court admitted in evidence a letter of January 1, 1914, addressed to appellee, written and signed by appellant, and referring to the payment by appellant of advance freight charges and demurrage, in a different transaction from the instant case, and prior to the one involved here, but similar in its facts as to advance or ocean rates. Lawrence had testified on cross-examination that he did not recall having written the

letter. On being shown the letter he admitted that he had written it, but said that he did not know what he meant in the letter by referring to advance charges. In that transaction appellant was dealing with appellee through White-Grant Company, though the letter does not disclose that fact, nor does it refer to them in any way. The court in its charge told the jury that the letter was "admitted before you for the purpose of showing defendant C. H. Lawrence's knowledge of ocean rates or advances, and you will consider it for no other purpose." The only ground of objection in appellant's propositions that in any way corresponds to the grounds of objection stated in the bill of exception is that it was not shown "that at the time of the shipment in controversy the rates were the same."

It seems to us that it was immaterial what the ocean rate was, or appellant's knowledge of the ocean rate. As we construe the contract of sale of the sugar, and under the facts found by the jury, Lawrence was liable to appellee for the unpaid advance or ocean freight, whatever it was, or whether Lawrence had knowledge of it or not. The matters stated in the letter made no reference to any issue submitted, and, evidently, did not influence the jury in any of their findings or the court in the judgment rendered. If the admission of the letter was error it was not reversible error.

The court was not in error in not excluding all of the evidence offered as submitted by appellant in some of the assignments and the propositions thereunder.

[12] Objection was made to the introduction in evidence of some of the freight bills and receipts because in the Spanish language. The objection is not tenable. The freight bills are not wholly in Spanish, but contain sufficient English words to make them intelligible, especially so in view of explanations made by witness Rogers, who was not cross-examined by appellant as to the meaning of any other Spanish words in the bills. So they were at least admissible to the extent of the English words contained in them, as well as to the extent explained or interpreted by the witness as against the reason assigned, that the defendant nor his counsel were advised as to their contents.

The court was not in error in refusing to strike out, on motion of appellant, certain allegations of White and Grant in their answer alleging that they were acting as brokers for Lawrence in the sale of the sugar to appellee. The facts pleaded by them were issuable facts and provable on the trial.

Finding no reversible error, the case is affirmed.