## GALVESTON, H. & S. A. RY. CO. v. TULLIS.
### (No. 8029.)

Court of Civil Appeals of Texas. San Antonio.
June 13, 1928.

Rehearing Denied July 11, 1928.

1. **Negligence** ⟨⟩121(2)—**Doctrine of "res ipsa loquitur" is that circumstances attendant upon accident justify jury in inferring negligence as cause.**

Doctrine of res ipsa loquitur is the "thing speaks for itself"; that is, that circumstances attendant upon accident are of such character as to justify jury in inferring negligence as cause of accident.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Res Ipsa Loquitur.]

2. **Carriers** ⟨⟩132—**Law infers negligence of carrier, where cotton linters loaded in good condition arrive at destination wet and unfit for use.**

Where 50 bales of mill-run linters, delivered to carrier in dry, clean, and marketable condition, reach point of delivery in wet, musty, and worthless condition, unfit for purpose for which shipped, law infers negligence of carrier.

3. **Carriers** ⟨⟩107—**Carrier accepting cotton linters for shipment must transport shipment with care, inspecting it at reasonable times and periods during transportation.**

Carrier receiving carload of cotton linters had duty to transport it with care, causing inspection of contents at reasonable times and at reasonable periods during entire transportation up to time of delivery.

4. **Carriers** ⟨⟩115—**Carrier's failure to inspect carload of cotton linters while being transported held lack of ordinary care.**

Where carrier accepted carload of cotton linters for shipment in dry marketable condition, and they arrived wet, musty, and unfit for purpose for which shipped, failure to show proper inspection constituted lack of ordinary care.

5. **Carriers** ⟨⟩117—**That cotton linters, which arrived unfit for use, were shipped in new car, held no defense; it being duty of carrier to furnish proper cars.**

Where carrier accepted carload of cotton linters in dry, clean, and marketable condition, and they reached destination in wet, musty, and worthless condition, fact that goods were shipped in new car *held* no defense, since it was duty of carrier to furnish proper cars.

6. **Trial** ⟨⟩350(6)—**Where cotton linters were marketable when shipped and worthless at destination, court could not submit condition on arrival to jury, but only negligence of carrier and inherent qualities of linters.**

In action against carrier for damages to shipment of cotton linters, which were loaded into car in dry and marketable condition and which arrived wet and unfit for use, court was not justified in submitting issue as to condition of linters on arrival, but only issues as to

whether condition was brought about by negligence of carrier, and whether condition was caused by inherent properties of linters (citing Words and Phrases, Res Ipsa Loquitur).

7. **Carriers** ⟨⟩132—**Doctrine of res ipsa loquitur held applicable where cotton linters delivered in marketable condition arrived at destination wet and worthless.**

In action for damages, where carload of cotton linters were delivered to carrier in dry and marketable condition and arrived at destination wet and worthless, doctrine of res ipsa loquitur was applicable (citing 7 Words and Phrases, Res Ipsa Loquitur).

Appeal from District Court, Victoria County; John M. Green, Judge.

Action by R. A. Tullis against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for the plaintiff, and defendant appeals. Affirmed.

Procter, Vandenberge, Crain & Mitchell, of Victoria, for appellant.

Fly & Ragsdale, of Victoria, for appellee.

COBBS, J. Appellant's statement of the case is:

"The appellee, R. A. Tullis, as owner, doing business under the trade-name of Tullis & Co., sued appellant, the Galveston, Harrisburg & San Antonio Railway Company, in the district court, Victoria county, Tex., on the 22d day of January, 1927, for alleged damages to a carload shipment, consisting of 50 bales of mill-run cotton linters, shipped from Victoria, Tex., in the name of the South Texas Cotton Oil Company, as consignor, on the 8th day of October, 1925, to Crittenden & Eastman Company, as consignee, of Burlington, Iowa, at which place the shipment arrived some seven or eight days later, and was delivered on, to wit, the 17th day of October, 1925. The South Texas Cotton Oil Company rendered invoice, dated October 8, 1925, to Tullis & Co., covering the cotton linters so shipped, and in turn Tullis & Co. rendered invoice to Crittenden & Eastman at Burlington, Iowa, for the shipment of linters, subject to deduction of freight charges from Victoria, Tex., to Burlington, Iowa. The shipment was refused for alleged defects therein by Crittenden & Eastman Company upon arrival at Burlington, and such shipment was reconsigned and reshipped October 30, 1925, in the same car by Tullis & Co., to the Globe Bedding Company at Winnipeg, Manitoba."

Appellant filed proper responsive pleadings.

[1] Plaintiff brought his suit, alleging the delivery of the 50 bales of linters to the defendant at Victoria, Tex., and that they were dry and clean and in suitable and proper marketable condition, and that they arrived at destination wet and musty and unfit for market at said point. In the nature of things it was impossible for plaintiff to know where, when, and how his goods were damaged, for they were within the exclusive management, custody, and control of defendant, and its common and connecting carriers from the

time of delivery at Victoria until they reached destination, and the manner in which said linters were permitted to get wet was purely within the knowledge of defendant. In other words, plaintiff declared on his cause of action strictly under the doctrine of res ipsa loquitur, which, literally translated, is, "the thing speaks for itself," and is merely a short way of saying that the circumstances attendant upon accident are themselves of such a character as to justify a jury in inferring negligence as a cause of the accident.

The case was tried throughout without a bill of exceptions being taken by defendant, and the only bill of exceptions in the record is one taken by the plaintiff to the charge of the court; his alleged purpose being to have the record show that the plaintiff attempted to have the court in his charge define inherent vice and to limit the inherent vice to that pleaded by the defendant, and offered a special charge covering those matters, which charge was objected to by the defendant and was refused by the court, although plaintiff contends its effect would have been to set the case before the jury from the defendant's standpoint and preclude defendant from taking any exceptions to the charge as given to the jury.

There is no controversy as to the amount of the judgment; it being the exact difference between the amount plaintiff had his linters sold for at Burlington and what he eventually received.

The case was submitted to the jury upon only two issues, and, the jury finding those issues in favor of appellee, a judgment was entered thereon against appellant for a total sum of $1,789.62, with legal interest thereon from date.

[2] The evidence shows that the 50 bales of mill-run cotton linters were loaded into the carrier's car at appellant's station at Victoria, Tex., in a dry, clean, and marketable condition, and reached Burlington, Iowa, in a "wet, musty, and worthless" condition, unfit for the purposes for which it was shipped. Under such circumstances the law infers negligence on the part of the carrier.

[3, 4] It was the duty of the carrier to transport the shipment with care and to cause an inspection of the car and its contents at reasonable times and at reasonable periods during its entire transportation and up to the time of its delivery. There is no sufficient proof of any proper inspection thereof, and the failure to do so shows a disregard to do its duty and a lack of ordinary care. G., H. & S. A. R. Co. v. Templeton, 87 Tex. 48, 26 S. W. 1066.

[5] In this case it is shown that the linters were dry and clean when loaded, but when they reached their destination were wet and musty, and the floor of the car in which the cotton was shipped was wet. It is no defense to this negligent act to say that the goods were shipped in a new car, for it is the duty of the carrier to furnish proper cars. Of course, that is a circumstance to be passed upon by the jury, but it does not prove that the doors may not have fallen open from vibration, severe windstorm, or some other cause of negligence that permitted the rain, somewhere along the route, to pour into the car and wet the floor of the car as well as the contents. Appellant failed to meet this issue. It is true it was a new car, modernly equipped, but appellant failed to show that it was properly inspected from time to time, or that the doors had not been opened en route, or were still sealed on arrival at destination, or, if ever opened or found open for any purpose, were closed and resealed without damage to the contents. In the absence of any proof or circumstance to negative any presumable negligence on the part of the carrier, the jury were allowed to settle the question and draw every necessary inference of fact from the testimony to aid them in returning a verdict.

The special issues submitted to the jury for their finding are very clear and comprehensible and unmistakable in their meaning. We do not see any prejudicial suggestion on matters not justified by the evidence, and therefore no comment on the weight of evidence, by the trial court.

[6] It is clear from the evidence that the cotton linters were dry, clean, and marketable at the place of delivery, where they were receipted for, and were in wet, musty and worthless condition upon arrival at their destination. The court therefore would not be justified in submitting to the jury any issue as to the condition of the linters on arrival, so that the only issue that should have been submitted was submitted, whether or not their condition on arrival was brought about by the negligence of the carrier or its connecting carriers, and as to whether the condition of the linters on arrival was caused by any inherent vice or defects or condition or hidden damage of said linters existing at the time they were loaded on the car at Victoria. These issues were clearly and properly submitted, and both issues were resolved by the jury from the evidence before them, and will not be disturbed. The issues submitted to the jury and their answers are as follows:

"Issue No. 1: Was the condition of the bales of linters in question on their arrival at Burlington, Iowa, caused by the negligence of the defendant or any of its connecting carriers in permitting said bales of linters to get wet or soaked with water while in transit? Answer 'Yes' or 'No.'" The jury answered "Yes."

"Issue No. 2: Was the condition of said linters on their arrival at Burlington, Iowa, caused by any inherent vices or defects or condition or hidden damage of said linters existing at the time they were loaded on the car at Victoria? Answer 'Yes' or 'No.'" The jury answered "No."

The jury was further instructed that the burden of proof was on the plaintiff to establish by a preponderance of the evidence the affirmative of issue No. 1 and the negative of issue No. 2.

The linters were shipped on a through bill of lading, and received in good order at point of shipment. It was shown by the evidence that, upon arrival of this car of linters at Burlington, it was rejected by the consignee on account of its condition, and a telegram sent to plaintiff explaining why it was rejected; the telegram reading as follows:

"Car number five one six naught five T and N O here rejected on account of condition wet musty worthless to us. Car now in hands transportation company."

The witness De Bruce identifies this telegram at S. F. 21. He further says:

"The bales constituting said shipment that were opened by us were wet in center and ends."

The witness De Bruce further says:

"I would say that the car in which the shipment reached Burlington, Iowa, was in good condition except that the floor was very wet."

See G., C. & S. F. R. Co. v. Wood (Tex. Civ. App.) 63 S. W. 165, citing McCray v. Ry. Co., 89 Tex. 171, 34 S. W. 95, and also cited and quoted in 7 Words and Phrases, First Series, p. 6137.

[7] It was alleged because it was impossible for appellee to know how, or when, this damage occurred, the goods being always in the possession of appellant, the case is therefore brought, and largely relied upon to establish the facts, upon the doctrine of res ipsa loquitur because the shipment was in good condition when received, but at point of destination was wet and nasty and the floor of the car very wet, upon arrival at destination, claiming under such circumstances the law presumes negligence against the carrier, as otherwise that condition would not have been brought about.

It is said, in G., C. & S. F. R. Co. v. Wood (Tex. Civ. App.) 63 S. W. 165, citing McCray v. Railway Co., 89 Tex. 171, 34 S. W. 95, which authorities are cited and quoted in 7 Words and Phrases, First Series, p. 6137, that:

"There must be reasonable evidence of negligence, but when a thing is shown to be under the management of the defendant or its servants, and the accident is such as in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of an explanation by defendant, that the accident arose from want of care. * * * The phrase 'res ipsa loquitur,' which, literally translated, means that 'the thing speaks for itself,' is merely a short way of saying that the circumstances attendant upon an accident are, of themselves, of such a character as to justify a jury in inferring negligence as a cause of that accident."

In the case of Hamilton v. Harris (Tex. Civ. App.) 223 S. W. 537, the same doctrine of res ipsa loquitur was urged to show negligence by reason of the injury itself, we said, quoting from authorities:

" 'The fact that Mr. Harris was burned constituted evidence that the X-ray was negligently applied,' and upon this inference alone predicates a recovery.

"The case, cited by appellant, of Jones v. Tri-State Telephone, etc., Co., 118 Minn. 217, 136 N. W. 741, 40 L. R. A. (N. S.) 485, 4 Neg. & Comp. Cases, 832, in support of such contention, has no application whatever.

"The case of George v. Shannon, 92 Kan. 801, 142 P. 967, Ann. Cas. 1916B, 338, 6 Neg. & Comp. Cases, 1086, cited, holds that the court may submit to the jury they were authorized to consider the fact that plaintiff's body was severely burned, in determining whether or not appellant's use of the X-ray was negligent, careless, or unskillful.

"And in Shockley v. Tucker, 127 Iowa, 456, 103 N. W. 360, cited, that 'plaintiff was severely burned is some evidence in itself that the treatment was improper.' "

We find no error assigned that should cause a reversal of this case, and all assignments and propositions are overruled, and the judgment of the trial court is affirmed.