SAN ANTONIO, U. & G. R. CO. et al. v. SCHMIDT et al. (No. 2266.)

Court of Civil Appeals of Texas. El Paso. May 2, 1929.

Rehearing Denied May 30, 1929.

238

sett in Live Oak county, Tex., three carloads of cattle to be shipped to the firm of Johnson & Weathersbee at Standart in Kinney county, Tex.

At the same time T. J. Bronson delivered one carload of cattle to said railroad company to be delivered to Sanderson Commission Company at Fort Worth, Tex.

The Storey cattle were free from fever ticks, and were being shipped under a form A certificate, which entitled them to be shipped into unquarantined territory; while the Bronson cattle were infested with fever ticks and were being shipped under a form B certificate, which authorized their shipment for immediate slaughter only.

Kinney county was outside the quarantine district.

Four stock cars, previous to the day of the loading, had been spotted near the stock pens of the railroad company, in the following order: No. 8249 opposite the chute leading from the pen, and cars Nos. 8306, 8604, and 8402 were in the same string of cars, but north of No. 8249 in the order named.

. Storey, not wanting to wait for the arrival of the train, had the agent prepare the bills of lading for his three cars prior to the loading, and on said bills of lading cars nos. 8306, 8604, and 8402 were assigned to him.

The agent instructed him to load his cattle first, as the Bronson cattle, which were being held in an outside pen, were infested with ticks, and should not be placed in the company's pens until after the Storey cattle had been loaded.

Mr. Storey went away, and his foreman, Y. E. Mills, attended to the loading of the cattle in the cars.

He proceeded to load part of the cattle in car No. 8249, and, when the train arrived and spotted the other cars for him, loaded the remaining Storey cattle in cars Nos. 8306 and 8604.

Later the Bronson cattle were loaded into car No. 8402, and cars Nos. 8249, 8306, and 8604 were delivered to the Galveston, Harrisburg & San Antonio Railway Company at San Antonio, and were then transported to Standart, and there delivered to the agents of Johnson & Weathersbee, and by said agents driven across the land of appellee Henry Schmidt. The shipment, as delivered to the Galveston, Harrisburg & San Antonio Railway Company at Galveston, and as by them delivered to the agents of Johnson & Weathersbee at Standart, included two cars of the clean Storey cattle and the car of unclean Bronson cattle.

. Appellee Schmidt filed this suit against the San Antonio, Uvalde & Gulf Railway Company, A. R. Ponder, as receiver of said railroad company, and the Galveston, Harrisburg & San Antonio Railway Company, for damages.

In his petition appellee alleged the receipt of the infected Bronson cattle by appellant;

Andrews, Streetman, Logue & Mobley, of Houston, F. C. Davis and Eskridge & Groce, all of San Antonio, and Frank Lane, of Bracketville, for appellants.

Baker, Botts, Parker & Garwood, of Houston, Boggess & La Crosse, of Del Rio, and W. B. Teagarden, of San Antonio, for appellee Galveston H. & S. A. Ry. Co.

Jones & Lyles, of Del Rio, for appellee Schmidt.

PELPHREY, C. J. In November, 1925, H. C. Storey delivered to the San Antonio, Uvalde & Gulf Railroad Company at Whit-

that they were known by the said company to be infected; that, by reason of the receipt of said infected cattle by appellant, it became and was its duty to transport said cattle to the infected stock pens in Fort Worth, Tex., for immediate slaughter, and to use ordinary care to prevent said cattle from being diverted and delivered into Kinney county, and in the proximity of appellee's land; and that appellee negligently diverted and caused or permitted said infected cattle to be diverted and delivered into Kinney county and driven across appellee's land, thereby causing his damage.

In alleging a cause of action against the Galveston, Harrisburg & San Antonio Railway Company, he charged that it knew that the cattle were infected; that it became its duty to prevent their delivery in Kinney county; that in failing to discharge such duty it was guilty of negligence; and that, by delivering said infected cattle into Kinney county from a quarantined area without a permit from the live stock sanitary commission of Texas, it violated the law of the state, and was guilty of negligence per se.

On the question of damages, appellee alleged that his land was quarantined as a result of the infected cattle being driven across it; that, as a result of said quarantine, he was required to dip his 255 head of cattle on eleven different occasions, at an expense of $704, and that, as a result of said dipping, his cattle were damaged and depreciated in value $20 per head; the same being the difference between the market value of the cattle and what it would have been except for the dipping.

The Galveston, Harrisburg & San Antonio Railway Company answered by general demurrer, special exceptions, a general denial, and by special answer alleged that the damage complained of was caused by the negligence of Johnson & Weathersbee or their agent at Whitsett, H. C. Storey, by T. J. Bronson, by the agent of appellant at Whitsett, or by the agents of Johnson & Weathersbee at Standart.

It also pleaded the contributory negligence of appellee, and prayed for judgment over against appellants.

The San Antonio, Uvalde & Gulf Railroad Company and the receiver answered the petition of appellee by a general demurrer, a general denial, and specially pleaded that appellee, not being in privity with the contract of carrier involved, should not recover on account of the violation of said contract; that it was not liable on the theory of a breach of a general duty, it owing no such duty to appellee, there being no contractual relation with him, and not having delivered the cattle into Kinney county or having driven them over or across appellee's land; and that any breach of duty on its part was not the proximate cause of the damages, but that the negligence of either the representatives of the live stock sanitary commission of Texas, the Galveston, Harrisburg & San Antonio Railway Company, Johnson & Weathersbee, or their agents, was such proximate cause. They further pleaded that the Galveston, Harrisburg & San Antonio Railway Company was guilty of negligence in not endeavoring, under the facts, to protect against the resulting loss, and that, if it was guilty of negligence, it was only passive as compared to the negligence of the Galveston, Harrisburg & San Antonio Railway Company, and prayed for judgment over against said railway company for all, or at least one-half, of any judgment against it.

The case was tried to a jury, and, upon the special issues submitted, found as follows: (1) That the agents of A. R. Ponder, receiver of the San Antonio, Uvalde & Gulf Railroad Company, diverted, or caused or permitted to be diverted, the Bronson cattle, and thereby caused them to accompany the Storey cattle to Standart, Tex.; that such action was negligence; that such negligence was the proximate cause of the quarantine of appellee's premises; that the market value of appellee's cattle was impaired in the sum of $3,746; that the reasonable and necessary expense incurred by appellee was $704; and that the agents, servants, and employees of the Galveston, Harrisburg & San Antonio Railway Company did not fail to exercise ordinary care in ascertaining whether or not the Bronson cattle were infested with fever ticks.

Upon the findings of the jury, judgment was rendered in favor of appellee against the San Antonio, Uvalde & Gulf Railroad Company and A. R. Ponder, receiver, jointly and severally, for $4,450, and in favor of the Galveston, Harrisburg & San Antonio Railway Company, both as to the cause of action alleged by appellee and on the cross-action of appellants.

This appeal is from that judgment.

### Opinion.

Appellant's brief contains thirty-eight assignments of error, under which they present eight propositions. Assignments of error Nos. 1, 35, and 38 complain of the court's action in overruling their general demurrer, in refusing to instruct a verdict in their favor at the close of the evidence, and in overruling their objections to the court's charge.

These assignments are made the basis for the following propositions:

#### "First Proposition.

"A cause of action for tort growing out of breach of contract does not exist in favor of one not a party to or in privity with said contract.

#### "Second Proposition.

"One charged with public duty either under contract, through operation of common law or by virtue of statute is not liable in damages for its breach to private third party.

240

"Third Proposition.

"Where causal connection between act complained of and injury done is not affirmatively shown recovery as for damages does not lie."

■ Appellants advance the argument that the negligence complained of by appellee in his pleading was merely a breach of their duty under the contracts with Bronson and Johnson & Weathersbee, and appellee, not being privy to either of said contracts, was not entitled to recover for damages inflicted upon him by reason of said breach.

We do not so construe appellee's pleading. His pleading reads:

"That by reason of the receipt of said infected cattle so infected with said fever carrying ticks and agency for the transmission of such disease, it became and was the duty of said defendant to transport said cattle to their destination and deliver the same to the infected stock pens at Fort Worth, Texas, for immediate slaughter, and to exercise ordinary care to prevent said cattle from being diverted and transported to another and different place than their destination and to a place not authorized by law and to prevent said cattle from being so diverted and delivered into territory which was free from infection with and exposure to said fever carrying tick and not subject to any quarantine regulations and particularly does plaintiff allege that it became and was the duty of each and all of defendants to refrain from diverting said cattle and from causing and permitting the same to be diverted from their aforesaid destination and from delivering the same into Kinney County at a time when said County was free from infection with and exposure to said fever carrying tick and not subject to any quarantine regulations and from delivering said cattle in the proximity of plaintiff's land."

Appellant's duty, as far as Bronson was concerned, was to see that his car of cattle were properly and seasonably delivered at Fort Worth, and only in failing so to do did they breach their contract with him. Their obligation to him would have been the same, regardless of the infected condition of the cattle. No damage was occasioned to Bronson by reason of the cattle being diverted to Standart on account of their condition other than would have arisen had they been clean cattle.

The contract with Bronson appears to have been pleaded only for the purpose of showing how appellants came into possession of the infected cattle, and appellee's cause of action was for negligence in the performance of a duty entirely separate and apart from their obligations to either Bronson or Johnson & Weathersbee under the shipping contracts.

Cooley on Torts, p. 104, note 1, announces the rule to be:

"The true question is, has the defendant committed a breach of duty apart from the contract itself? If he has committed a breach of the contract he is liable only to those with whom he has contracted. But if he has committed a breach of duty, he is not protected by setting up a contract in respect to the same matter with another."

Our Supreme Court, in the case of House v. Houston Waterworks Co., 88 Tex. 233, 31 S. W. 179, 28 L. R. A. 532, approved this rule, citing in addition to Cooley on Torts, supra, Shearman & Redfield on Negligence, § 116, and Moak's Underhill on Torts, p. 23, rule 7; page 24, rule 8; page 25, subrule.

The duty which appears to us to be established by the pleading and the evidence was that of preventing the infected cattle from being diverted into territory where their presence would necessarily cause damage to others.

Considerable space is devoted by appellants in their brief to a discussion of the facts and circumstances surrounding the billing and loading of the Storey cattle.

We fail to see how these facts can have any material bearing on the proper disposition of this case, for the negligence complained of was the diversion of the Bronson cattle, which arose from appellant's agent at Whitsett failing to properly bill them.

The evidence appears to be uncontradicted that Mr. Bronson billed his cattle after they had been loaded by him into a car which had been spotted for that purpose by the train crew of appellants.

■■ Regardless of the fact that part of the Storey cattle had been loaded into a car which appellant's agent, without any knowledge on Bronson's part, had decided to assign to Bronson, when he, after having his cattle loaded, came to her to have his cattle billed, it became her duty to see that the waybill on said cattle called for the car in which they were actually loaded, and the jury's finding that she was negligent in failing so to do was amply supported by the evidence. The improper billing of the Bronson cattle was the cause of those cattle going to Standart instead of Fort Worth, and not the fact that Storey's men had loaded their cattle into the car which she had, in her own mind, decided to assign to Bronson. Appellants further contend that they are not liable for any negligence on their part because of the intervention of the negligence of the agents of the Galveston, Harrisburg & San Antonio Railway Company and Johnson & Weathersbee at the time the cattle arrived there.

■ This negligence, they claim, arose from the fact that the waybill for car No. 8402 called for 32 head of steers, and that, when the cattle were unloaded and counted, there were 44 head of mixed cattle, and the further fact that there was testimony to the effect that ticks were plainly visible on the cattle. We agree with appellants that these facts were sufficient to put those present at the unloading upon notice that a mistake had

occurred either in the loading or the billing of the cattle, but we cannot agree that, as a matter of law, they were charged with notice that the cattle in car No. 8402 were infected cattle. The proof shows that the shipment was accompanied by a form A certificate and that the three cars had all been shipped by Storey to Johnson & Weathersbee under said certificate.

The cause of the damage to appellee was the fact that infected cattle were driven across his land, and not that they were mixed cattle instead of steers, nor that there were 44 head instead of 32.

In any event, the question of whether or not the agent of the Galveston, Harrisburg & San Antonio Railway Company was negligent in delivering the cattle under the facts and circumstances was one for the jury to decide, and there was sufficient evidence to support their finding that there was none.

Neither do we agree with appellants that their duty to prevent the diversion of the cattle into Kinney county was a public one, and one for a breach of which appellee could not sue.

In the case of Reynolds v. G., H. & S. A. Ry. Co., 101 Tex. 2, 102 S. W. 724, our Supreme Court held that the railway company was liable for the injurious consequences of a quarantine of plaintiff's land because of its negligence in permitting infected cattle to escape and go upon his land. The court said: " * * * The Railroad Company should be held liable for such injuries to the plaintiff as" resulted from "the natural consequences of the escape of such cattle."

The facts of this case were before the San Antonio Court of Civil Appeals in San Antonio, U. & G. R. Co. v. Johnson & Weathersbee, 1 S.W.(2d) 350, at least all those which bear on the question of liability, and a judgment against appellants was affirmed by that court.

Appellants also contend that the court erred in admitting the testimony of the witnesses W. T. Johnson and Oland Weathersbee as to admissions made by Mr. Lewis; appellant's contention being that the evidence was objectionable as an effort to prove agency by declarations of the agent and liability of the principal by admissions of persons not shown to have authority to bind the principal.

Mr. Ponder, the receiver, according to the record, admitted to the witness Johnson that they had loaded the cattle into the wrong car; therefore, the question of the mistake having been established by the admission of one of the parties himself, the admission of other evidence to the same effect would not be reversible error.

The witnesses Storey and Mills testified that the Storey cattle were loaded in the customary way, and that it was customary for the cars to be spotted corresponding to the numbers on the bills of lading.

Appellants objected to this testimony, and assign error to the court's refusal to exclude it.

The question of negligence upon which a recovery was sought was that of the improper billing of the Bronson cattle, and appellants injected into the case the question of negligence on the part of Storey or his foreman.

We, in accordance with the view we take of the case, cannot see the relevancy of this testimony, but its introduction could have no bearing on the question of whether appellant's agent was negligent in failing to properly bill the Bronson cattle so as to prevent them being diverted into clean territory, and consequently does not call for a reversal of the case.

Appellants objected to the introduction of the quarantine notices, on the ground that it had attached to it only rubber stamp signatures.

Mr. Murray, inspector for the live stock sanitary commission, testified that he made the inspection; made a report to the commission and that the notice was sent to him to serve; and that such notice was the customary notice sent out by the commission. We think this evidence sufficiently identified the notice as being the act of the commission, and was properly admitted.

Appellee and the witness Murray both testified that the cattle were damaged considerably by being dipped, and appellee further testified that the difference in the market value of his cattle at the end of the quarantine and what it would have been except for the quarantine and the conditions resulting from it was $20 per head.

This testimony was objected to by appellants on the ground that it did not tend to enlighten the jury as to the proper measure of damages. We agree with appellants that the general rule for the measure of damages in a case of injury to personal property is the difference in the market value before and after the injury, but it is equally as well established that compensation for the injury sustained is the object of the law in giving damages. As said by the Supreme Court in G. C. & S. F. R. Co. v. Hume, 87 Tex. 211, 27 S. W. 110:

"There is no fixed rule, but having this fundamental principle in view, courts apply it to the particular case so as to ascertain with the greatest certainty what the injury is, and thus to make whole the damage done."

The record here discloses that the premises of appellee were under quarantine for a period of about eight months, and that during that time he was required to dip his cattle eleven times. Would the difference between the market value of these cattle before the premises became infected and immediately thereafter afford appellee compensation? Would the difference between their market value before and after the quarantine fully compensate him? We think neither rule would suffice.

It is uncontradicted that systematic dipping retards the growth of cattle and decreases their flesh, and, if we are to take merely the difference in the market value of these cattle before the quarantine and after, then who must bear the loss of growth and flesh during the eight months this quarantine was in force?

The facts presented here are of such a nature as we believe call for the application of a rule different from the general one, and the rule applied here, we think, a just one. We know of no other that would compensate for the injury sustained. The assignments relating to the admission of the testimony are accordingly overruled.

Appellants' twenty-sixth assignment complains of the action of the trial court in permitting the introduction of paragraphs 5 and 7 of the certified copy of the order of the District Court of the United States in the matter of the receivership of the appellant railroad company.

The parties entered into the following agreement at the commencement of this trial: "It is agreed that the receiver, A. R. Ponder, of the San Antonio, Uvalde & Gulf Railroad Company, has delivered the property of the San Antonio, Uvalde & Gulf Railroad Company, which was in his hands as such Receiver, to the San Antonio, Uvalde & Gulf Railroad Company; and that on the dates alleged during November, 1925, the San Antonio, Uvalde & Gulf Railroad Company was in the hands of the Receiver, and that A. R. Ponder was the duly appointed, qualified and acting Receiver thereof, and has never been fully discharged as such."

Article 2305, Revised Statutes 1925, provides that, when property is returned to the owner without a sale, such owner shall be liable for all the unpaid liabilities of the receiver in causes of action arising out of and during the receivership; that such owner may be made a party defendant along with the receiver; and that, if judgment is rendered against the receiver, judgment shall also be rendered against the owner. This statute seems to be applicable to this case, and the assignment is overruled.

We have carefully studied the many questions presented by appellants, and, finding no error justifying a reversal of the judgment, it is affirmed.