**RAILWAY EXPRESS AGENCY, Inc., v. LYON et al.**

No. 3652.

Court of Civil Appeals of Texas. El Paso.
March 24, 1938.

Rehearing Denied April 14, 1938.

Turney, Burges, Culwell & Pollard, of El Paso, and on Rehearing, Burges, Burges & Scott, of El Paso, for appellant.

McBroom & Clayton, of El Paso, for appellees.

NEALON, Chief Justice.

Charles Lyon and Steve Wardy, appellees (plaintiffs below), brought this suit against appellant, Railway Express Agency, Inc., a common carrier. They alleged that they purchased from a concern in California a shipment of strawberries; that the berries were delivered to the defendant, as a common carrier, with instructions to precool the freight car in which they were to be shipped and to keep it fully iced to destination, with 3 per cent. salt, the car vents to be closed; that the berries, at the time they were delivered to defendant, were in good and marketable condition; that the defendant negligently failed to keep the freight car properly iced, and failed to ship the berries in a car suitable for that purpose, or, if the car was ordinarily suited for that purpose, it was in a defective condition; that defendant negligently permitted some foreign substance to get or remain in the car causing the berries to deteriorate. Plaintiffs pleaded in the alternative that the strawberries were delivered to the defendant in a good and marketable condition, and when they were delivered by defendant to plaintiffs they were in a damaged and spoiled condition; that during transit the berries and the car containing them were in the exclusive custody and control of defendant; and that if the shipment had been properly handled and had ordinary and customary precautions been taken, the berries would have reached plaintiffs in a sound and marketable condition, but through the negligence of defendant in some particular or particulars unknown to plaintiffs but of which defendant was or should have been fully aware, the berries were damaged. Damages were alleged in the sum of $785.93, representing the alleged difference in the market value of the berries at El Paso in a sound and in an unsound condition.

The defendant answered by general demurrer and general denial, specially pleading that it had performed all the duties incumbent upon it; that if there was any damage, it was due to the inherent vice of the commodity.

The issues were submitted to the jury on a general charge, in response to which a verdict for plaintiffs in the sum of $785.93 was returned. Judgment was entered accordingly. Defendant appeals from this judgment.

## Opinion.

Succintly stated, the appellant makes two contentions: (1) That there was no evidence that the defendant failed to exercise ordinary care in the transportation of the strawberries involved from the point of origin to the point of destination; (2) that there was no evidence as to what would have been the market value of the strawberries at El Paso had ordinary care been used in their transportation, nor is there any evidence as to the actual market value of the strawberries in the state of their arrival at El Paso.

█ As to the first contention, the manager of the organization that shipped the berries, who had been shipping berries for fifteen years, testified that they were all shipable berries, and before being shipped were inspected by the county agricultural inspector of the county where the shipment originated, and that he passed and inspected them for shipping purposes; that they were sold and shipped in condition for interstate shipment; that the berries were picked on the day they were shipped; that some had been on hand about an hour before they were loaded, some for about one-half hour, and some were placed in the car as soon as they arrived. F. O. Stevens, manager of plaintiff, who had been in the wholesale fruit business in El Paso since 1906, testified that the strawberries were received in a damaged condition; that an automatic recording tape showing the temperature in the car was placed in the car at the time it was loaded, which was around 4 o'clock in the afternoon of May 21st; that about 9 o'clock that night it reached its low register, which was about 45 degrees; that it started going up about 2 o'clock, reaching its high point of 58 degrees later in the morning; that it then started going down again gradually, and between thirty-two and thirty-four hours elapsed before the temperature again got as low as 50 degrees; that in handling shipments of berries the temperature should be kept at 45 degrees or lower; that if strawberries were in a marketable condition at the time they were loaded, were loaded in a proper car, and the car precooled and properly iced, the berries should

reach El Paso from Florin, Cal., in good condition; that during the same month in 1935 Lyon & Company received other shipments of berries from the same point in California, and they arrived in good condition; that berries arriving in good condition have been kept by his firm as long as ten days; that the car was unloaded within an hour and a half after it had reached the warehouse; that when the car was opened at the El Paso Union Depot the berries were mouldy, with a white fuzz all over them, that they were "leaky," but that those nearest the ice bunkers were in better condition; that the thermometer tape showed that the temperature went to 45 degrees immediately after the precooling but by the next morning it had gone up to 59 degrees, and that that indicated no ice had been put in after the completion of the precooling. An inspection report signed by defendant's agent and prepared after the car was opened at El Paso carried the notation: "An odor in car. Unable to determine nature or cause. Some mould on berries unloaded, some ripeness." Plaintiffs' witness Amescua testified that he was present when the car was opened, and that the berries near the door were mouldy and leaking; that the baskets were wet on the bottom; "the condition was bad" and they were mouldy and rotten. Practically to the same effect was plaintiff Lyon's testimony as to the condition in which the berries were received. This evidence was sufficient to carry to the jury the issue of negligence upon the part of the defendant and to sustain the jury's finding thereon. Galveston, H. & S. A. Ry. Co. v. Tullis, Tex.Civ.App., 8 S.W.2d 247; Railway Express Agency v. Rouw Co., 186 Ark. 111, 52 S.W.2d 624; San Antonio, U. & G. Ry. Co. v. Clarke & Keller, Tex.Civ.App., 81 S.W.2d 113; G., C. & S. F. Co. v. Taylor, Tex.Civ.App., 101 S.W.2d 642; St. Louis Ry. Co. v. Hill Bros., Tex.Civ.App., 80 S.W.2d 432.

█ As to the proof of value and damages: Plaintiffs' witness Stevens testified that he had often purchased strawberries from California shippers; that when the shipment in question arrived he immediately notified defendant's claim agent at San Francisco, who telegraphed him: "Suggest you handle to best advantage, responsibility to be determined by subsequent investigation"; plaintiffs paid consignor $885.50 for the berries, being their market value f. o. b. at Florin, Cal., on

the date of shipment, and paid express, shipping, and cooling charges and rent on automatic recording thermometer, which expenditures aggregated $494.08, making a total outlay of $1379.58; that he was able to state what would have been the reasonable market value of this shipment if it had arrived in good condition, and that it was about $1,739; that its reasonable market value in the condition in which it did arrive was $655.00; that the berries were sold to the best advantage for $655.10; that the expense of handling was $71.45; that the amount for which they were sold was the best price that he could obtain. The evidence was sufficient. Burr's Ferry, B. & C. Ry. Co. v. Allen, Tex.Civ.App., 164 S.W. 878; Fort Worth & D. C. Ry. Co. v. Tomson, Tex.Civ.App., 250 S.W. 747; San Antonio, U. & G. Ry. Co. v. Schmidt, Tex.Civ.App., 18 S.W.2d 237; Southern Kansas Railway Co. v. Bennett, 46 Tex.Civ.App. 379, 103 S.W. 1115; International Railway Co. v. Dimmit County Pasture Co., 5 Tex.Civ.App. 186, 23 S.W. 754; Houston & T. C. R. R. Co. v. Ellis, 111 Tex. 15, 224 S.W. 471; Texas Evidence, 812.

All assignments of error are overruled. The judgment is affirmed.