Lee T. MEYER et al., Appellants,

v.

Guy A. THOMPSON, Trustee, International-Great Northern Railroad Company, and Missouri Pacific Railroad Company, Appellee.

No. 12861.

Court of Civil Appeals of Texas.

Galveston.

Nov. 23, 1955.

Rehearing Denied Dec. 8, 1955.

Merrill & Scott, Houston, Sam R. Merrill, Houston, of counsel, for appellants.

Hutcheson, Taliaferro & Hutcheson, Woodul, Arterbury & Wren, Howard S. Hoover, and Carroll R. Graham, Houston, for appellee.

CODY, Justice.

This was a suit by appellants to recover damages from appellee for negligent delay in transporting six gondola cars loaded with water-damaged wheat from Houston to San Antonio. Appellants are partners in the grain business. In the transaction before the Court the appellants acted by and through Lee Meyer. The following are the controlling facts:

That about December 24, 1949, a barge loaded with wheat arrived in Houston from Chicago. In the process of unloading, it was found that the bottom portion of the wheat in one of the compartments of the barge had become wet from seepage which had come in from a leak in the bottom. The consignee declined to accept the wet portion of the wheat, and the insurance company took charge of it and proceeded to try to find purchasers for it. In such cases as the one before the Court, a crust forms over the wet wheat, which blocks it off from the dry wheat and which protects the wet wheat from rapid deterioration.

That appellants became interested in buying the wet wheat. At the time Lee Meyer examined it, it was warm but not heating, and it had a slight sour smell. There is no wheat dryer in Houston, and the nearest one is in San Antonio. When the protecting crust over wet wheat is removed, the deterioration becomes more rapid. The appellants were of the opinion that the wet wheat here involved could be salvaged and made into poultry feed,—it could not be made fit for human consumption.

That there are two daily regular freight trains from Houston to San Antonio. They are scheduled to make the run in between eleven and twelve hours. If the water-damaged wheat in question could be gotten to the wheat dryer in San Antonio within two or three days after it had been unloaded from the barge, it could be salvaged and sold for a price of $1.85 a bushel for the purpose of being used in manufacturing poultry feed. Appellants bought the water-damaged wheat, which amounted to 7,433 bushels, for $1,500.

That thereafter four of the cars were loaded with the water-damaged wheat on December 30, 1949, and bills of lading were duly issued thereon. No unusual notations were made on the bills of lading, but Mr. Meyer told the yard master that he was going to ship damp wheat in the cars, and at the time of the issuance of the bills of lading Mr. Meyer gave appellee's representative a letter requesting that the loaded cars be "rushed." No notification was given to any of appellee's representatives

that the wet wheat was being shipped to San Antonio to be reconditioned or salvaged in order to be manufactured into poultry feed, nor did appellants give any notice of the consequences which would result if the shipment was not promptly transported. What has been said with respect to the four cars applies equally to the remaining two cars, with this exception. The two cars were loaded on December 31, 1949, at which time bills of lading covering same were correspondingly dated.

That on Monday, January 2, 1950, the consignee of the water-damaged wheat, namely, the Liberty Mills, which had expected to begin drying the wheat on that morning, phoned appellants that the shipments in question had not arrived. The appellants then investigated and learned that the cars of wet wheat were still in Houston. Thereafter five of the cars reached San Antonio, and the consignee, at 11:00 a. m. on January 4, and the 6th car, on January 7, 1950. The wheat was then black and had developed a terrific odor, and had no market value at San Antonio. In this connection it may be noted that appellee's representatives could tell from the loaded gondola cars that wheat was being shipped therein. The foreman of the engine crews testified that they could smell the sour odor some ten cars' lengths away when they moved the same from the barge terminal. But, as indicated above, appellee's representatives were never given any information that any special damages would result from the failure to transport the wheat in question within a reasonable time. Wheat is not ordinarily a perishable commodity.

The case was, submitted to the jury on special issues, and so far as is here material, the jury found in substance: (a) The wet wheat had a salvage value when delivered to appellee for shipment, (b) that it was necessary to have the wheat dried within a reasonable time to save its salvage value, (c) that appellee failed to transport the wheat within a reasonable time, (d) which was negligence, (e) and which was the proximate cause, (f) that appellants suffered damages as the result of appellee's failure to transport the wheat within a reasonable time.

The parties stipulated that no damage issue need be submitted as appellants' damages amounted to $11,536.65. But appellee did not agree that appellants had plead the proper measure of damages.

Appellants moved for judgment upon the verdict, which motion was refused, but the court rendered judgment for appellee on his motion for judgment notwithstanding the adverse findings of the jury aforesaid. Appellee also sought by cross-action a recovery for $3,177.59, which the court awarded. Appellee's cross-action sought to recover unpaid freight charges, demurrage, etc.

Appellants predicate their appeal upon eleven formal points, covering some two and one-half pages in their brief. But in substance such points boil down to these:

(a) That a shipper is entitled to recover as damages for delay of transportation and delivery of a shipment the difference in value at the destination of the commodity shipped at the time and in the condition of its arrival, and what such value would have been if delivered within a reasonable time. And appellants contend that under such measure of damages they were entitled to recover $11,536.65 because such would have been the value of the wheat if the same had been delivered to the consignee within a reasonable time and by said consignee salvaged so as to be manufactured into poultry feed;

(b) That appellants were entitled to recover the pecuniary compensation for the loss sustained by them by reason of the acts and omissions of appellee, the amount of which is fixed by the stipulation of counsel, namely $11,536.65;

(c) That the evidence showed that appellee had constructive notice, at the time the wheat was accepted for shipment, that such wheat was in such a condition as to render prompt transportation and delivery thereof necessary in order to avoid damages to appellants;

(d) That appellee also had actual knowledge thereof; and,

(e) That the court erred in rendering judgment against appellants and for appellee upon appellee's cross-action.

 As appears above, the jury found that appellee violated his duty to transport the water-damaged wheat to San Antonio within a reasonable time. The evidence amply supports, if it does not compel such finding. Furthermore, appellants requested appellee to please rush the shipment and according to appellee's admission, such instruction called for preferential handling. If the damages which appellants sought to recover were general as distinguished from special, then the rule to be applied in this case in awarding damages is that appellants should recover actual compensation for the loss sustained. International-Great Northern Railway Co. v. Casey, Tex.Com.App., 46 S.W.2d 669, 670; and see San Antonio, U. & G. Ry. Co. v. Schmidt, Tex.Civ.App., 18 S.W.2d 237, 241. Both parties recognized that the measure of damages normally applied to the right of recovery for delay of transportation and delivery of a shipment by a carrier is the difference in the market value of the property at the destination at the time and condition of its arrival and what such value should have been if transported and delivered by the use of ordinary care. Missouri, K. & T. Ry. Co. of Tex. v. Webb, 20 Tex.Civ.App. 431, 49 S.W. 526, 531.

In his motion for judgment notwithstanding the verdict, appellee urged that there was no evidence as to the market value of the damaged wheat at San Antonio at the time it should have arrived. Appellee further urged in its said motion that appellants are seeking to recover special damages arising out of the delayed transit.

 Now, it is true that appellants did not frame their pleadings so as to sue appellee to recover lost profits. But the undisputed evidence shows that appellants paid $1,500 for the damaged wheat; that the freight charges amounted to $2,141.51; that

the cost of drying the wheat would have been $2,232; that the brokerage fee was $372; and that the stevedore charges were $508.61. And the evidence further shows that appellants had contracted for the sale of the wheat, subject to the same being dried out, for $1.85 a bushel. Furthermore, if appellee had made delivery in a reasonable time appellants would have realized a profit of about double their investment in less than a week. There is nothing wrong about this. Indeed, it was very commendable for appellants to do what they did. America has become what it is because its citizens have been willing to take constructive risks. But in this suit appellants are attempting to hold appellee to liability for the risk, and this without giving appellee any notice of the risk which appellants contend was riding on his exercise of due care. The sine qua non of the success of the venture was the element of time. In other words, if appellee had exercised ordinary care in transporting the wheat, the venture would have succeeded. But appellee had no notice of the condition of the wheat which he was to transport other than it was wet and giving off an odor, and had no notice that it would not be fit for the purpose for which it was being shipped if it were not handled by him with due care. Of course appellee's instructions were to "please rush" and under appellee's admissions this entitled the shipment to preferential handling. But as will hereafter appear, the immunity of a carrier from liability for special damages rests upon the fact that he was under no duty to foresee injuries which might result from his negligence in the absence of knowledge of the special circumstances giving rise to such injuries.

 In this connection we adopt the definition for special damages quoted by appellants from 25 C.J.S., Damages, § 2, p. 460, reading: "Special damages always grow out of an unusual or peculiar state of facts, which may be known to one of the parties and not to the other, and follow the injury as a natural and proximate consequence, in the particular case, by reason of special circumstances or conditions." Judge Denman, for the Supreme Court, held in

Missouri, K. & T. Ry. Co. of Texas v. Belcher, 89 Tex. 428, 35 S.W. 6, 7, that the rule seems to be settled "that plaintiff, in order to recover special damages for breach of a contract, must show that at the date of the contract defendant had notice of the special conditions rendering such damages the natural and probable result of such breach, under circumstances showing that the contract was to some extent based upon or made with reference to such conditions." —We know of no difference in the right of a plaintiff to recover damages from a carrier in connection with the wrongful handling of a shipment whether the suit is based on common law negligence, or is based upon the bill of lading (i. e., contract of carriage), except that the suit for negligence is barred by the two year statute of limitations. See Elder, Dempster & Co. v. St. Louis Southwestern Ry. Co. of Texas, 105 Tex. 628, 154 S.W. 975. It was recognized in the cited case that special damages could be recovered on the contract of carriage after the carrier was put into possession of such facts as reasonably indicated the result that would follow from a failure to use ordinary care to carry and deliver to the consignee. See Id., 105 Tex., at pages 637, 638, 154 S.W. 975.

It was held in Conn v. Texas & New Orleans Ry. Co., Tex.Com.App., the holdings being adopted by the Supreme Court, 14 S.W.2d 1004, 1005, that it was the duty of carriers to use due care to forward and deliver the shipment within a reasonable time and "that duty was not lessened by absence of such notice, * * *. In such case, notice, or lack of it, does not go primarily to the matter of duty vel non."

"Primarily, it relates to foreseeability and thus to proximate cause. The carrier is immune to liability for 'special damages' resultant of negligence transpiring before notice of the 'special circumstances' because, unless it were more than the 'ordinarily prudent man,' it could not then (i. e., at time of negligent act or omission) foresee the effect, and not because it performed its duty. * * *" Also see Gardner v. Mid-Continent Grain Co., 8 Cir., 168 F.2d 819.

We do not understand that appellants contend that the Court did not correctly award appellee judgment on his cross-action if the court was correct in denying appellants' recovery on the main action.

The judgment is affirmed.

GANNON, J., not sitting.